# SUPREME COURT

OF THE

## STATE OF MISSOURI

OCTOBER TERM, 1909.

*(Continued from Volume 225.)*

LAURA CARTER DAVIDSON v. I. M. DAVIDSON REAL ESTATE & INVESTMENT COMPANY, JAMES L. DALTON and JAMES LAVIN, Appellants.

Division One, March 1, 1910.

1. **AMENDING JUDGMENT FOR RESPONDENT: No Appeal.** If the petition makes a direct attack upon a former interlocutory judgment in partition, and the court renders judgment in behalf of plaintiff, holding the sale under said judgment to be void, but does not hold the interlocutory judgment itself to be void, the court on appeal by defendant, though plaintiff does not appeal, will consider whether or not the judgment should have decreed said interlocutory judgment to be void on the ground that the trial court had no jurisdiction, as well as on the ground that the judgment was concocted in fraud.

2. **————: Partition: Jurisdiction: Wrongful Construction of Will: Res Adjudicata.** The circuit court has jurisdiction of the subject-matter in partition suits, and power to construe wills and declare the character of trust created thereby; and if it had jurisdiction over the parties and erred in its construction of the will in holding that a partition suit could be maintained,

although the will prohibited the sale of the property for fifteen years, and no appeal was taken from that erroneous holding, the judgment cannot be set aside in a subsequent direct attack, unless it was concocted in fraud.

3. **FRAUDULENT JUDGMENT: Partition Sale.** A minor heir can maintain an equitable action, if timely brought after she becomes *sui juris,* to set aside an order or judgment approving a sale in partition on the ground of fraud in its procurement.

4. ———: ———: **False Report: Reciting Payment.** Where the interlocutory judgment directed a sale for cash, or one-half cash and the balance on time, a report by the special commissioner that the successful bidder had paid him its entire bid in cash, when in fact he had received no cash, was a fraud on the court.

5. ———: ———: ———: **Receipt for Payment.** A receipt given by a creditor of the estate to the commissioner, acknowledging the payment to him of certain moneys, when in fact he had received nothing, and a giving to such creditor of a deed of trust for such sum on lands not yet deeded to the bidder and an assumption by the bidder of the debt, when the order directed a sale for cash, or not less than one-half cash and the balance on time, constitute a fraud on the court.

6. ———: ———: **False Recital In Order.** A recital in the order of approval of the commissioner's sale in a partition suit that the cash had been reported by the commissioner and had been paid out on the receipts of the parties entitled thereto, when in fact no cash had been received, and all the coparceners received was stock in a corporation which had been organized to buy the lands, and which had no cash, was a fraud upon the court, perpetrated in the concoction of the order, and authorized its vacation and the cancellation of the deeds at the suit of a then minor.

7. ———: ———: **Stock in Corporation: By Guardian of Minors.** The widow as guardian of minor heirs or devisees has no authority in law to hazard their rights by an agreement to the formation of a corporation to take over the lands and to accept stock therein in proportion to their interests in the estate.

8. ———: ———: **Court Not in Session: Verity of Recital.** Where plaintiff offered parol evidence to show that the court was not in session on the day the partition sale was made, and defendants did not object to its competency, they will not be heard on appeal to contend that the record reciting the court was in session on that day imports verity; nor will the court

decide whether or not it does import verity, but will dispose of the point upon the theory on which it was presented at the trial, namely, that the evidence was competent to impeach the record.

9. ———: ———: **On Vacation Day.** The words of the statute requiring a partition or execution sale to be made "on some day during the term" mean some day when the court is in actual session for the transaction of business, and not some day of vacation between two portions of the term. Where the court adjourned on the 9th to the 13th of the month, a partition sale could not be made on the 12th.

10. ———: ———: **For Cash: Fraud.** Where there were minors and the order directed a partition sale for cash, and no cash was received, the sale is voidably fraudulent; and where the guardian of the minors, the adult coparceners, the commissioner and the bidder all acquiesced in the false report of a sale for cash, when no cash was received, the sale will be set aside in a direct attack thereon by one of the minors, as being a fraud on the court.

11. ———: ———: **To Unorganized Corporation.** A sale in partition to a corporation which did not become a legal entity for two days after the sale, was invalid. It had no capacity to receive and hold real estate, and no power to appoint an agent to purchase for it.

12. ———: ———: **Invalid: Estoppel: Stock in Corporation.** The widow, as guardian and curator of the minor children, of whom plaintiff was one, agreed for herself and them to organize a corporation to take over the estate lands, and to receive stock of the company for their respective shares, and in pursuance of said agreement with the promoters, who have now become the owners of the stock held for plaintiff by paying for it out of the funds of the corporation, which were derived from rents and sales of lands, the corporation was formed, and at the partition sale bid in the property, which sale was void because not made in accordance with the order of sale, and was approved upon a false report, and did issue stock to the guardian and curator of plaintiff. The articles of the corporation do not recite that any shares are held in trust for the minors. The promoters derived $12,000 a year from rents and managed to spend it all as expenses, and from time to time a subsequent guardian and curator, who was a mere figurehead for the corporation, obtained an order from the probate court to sell some shares of stock belonging to the minors, and by that means the widow was paid from $50 to $100 a month to support the minors; and among other things, this guardian and curator got an order directing him to invest $6731.86 in one hundred shares of the company, when in

fact she had no money. *Held, first,* that the widow, as guardian and curator of the minors, had no authority to subscribe for the stock unless authorized by the probate court to do so, and there was no such order; *second,* the order directing the subsequent curator to invest $6731.86 of plaintiff's money in the stock of the company, was a nullity, since he had no money in his hands; and, *third,* there is nothing in the facts to estop plaintiff from making a direct attack on the invalid sale, and to have it set aside and the deed cancelled, and to divest all title out of the company.

13. **CURATOR: Investment of Minor's Money: Invalid Order.** An order of the probate court authorizing the minor's guardian and curator to invest the minor's money in stock of a corporation, amounts to nothing if the minor had no money.

14. **RECEIVER: Error in Appointment.** The Supreme Court will not determine whether or not the trial court erred in appointing a receiver in a suit to set aside a partition sale, if no such alleged error is found in the motion for a new trial.

Appeal from Mississippi Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Henry N. Phillips* for I. M. Davidson Real Estate and Investment Co.; *Wilson Cramer* and *John G. Wear* for Jas. L. Dalton.

(1) It was a part of the ancient and well-defined jurisdiction of the courts of chancery to construe wills and to declare the limitations of trusts created thereby; and the creation of our county and probate courts has not divested them of this power in this State. Hamer v. Cook, 118 Mo. 476; Hayden v. Marmaduke, 19 Mo. 403; Church v. Robberson, 71 Mo. 326; Bank v. Chambers, 96 Mo. 459; Heady v. Crouse, 203 Mo. 114. The circuit courts of this State have all general common-law jurisdiction, including equity jurisdiction of course, which is not conferred upon another court or tribunal. Hope v. Blair, 105 Mo. 85; Sauter v. Leveredge, 103 Mo. 615; Castleman v. Relfe, 50 Mo. 583; Wonderly v. Lafayette Co., 150 Mo. 535; State ex rel.

v. Dearing, 180 Mo. 64. Any one claiming as a beneficiary under the will may maintain a suit to construe the will. Church v. Robberson, 71 Mo. 326; Glover v. Shipley, 127 Mo. 163; Clark v. Carter, 200 Mo. 535; Heady v. Crouse, 203 Mo. 114. The judgment was not irregular, in the proper use of that term, and a court, therefore, would have no power after the term at which it was entered to set it aside, and, especially so, not at the instance of the parties seeking, obtaining and reaping the fruits of that judgment. Reilly v. Nicholson, 45 Mo. 160; Jones v. Hart, 60 Mo. 351; Gray v. Bowle, 74 Mo. 419; State ex rel. v. Lentz, 178 Mo. 378; Hall v. Lane, 123 Mo. 633; Bois v. Elliott, 65 Mo. App. 100. (a) The parties here complaining were all in court and the court therefore had jurisdiction of their persons. (b) The lands described in the petition and sought to be partitioned were all located in Butler county, Missouri, and therefore the court had jurisdiction of the subject-matter. (c) The court exercising common law and equity jurisdiction had the right and power to construe the will, terminate the trust attempted to be created therein, and the judgment and decree of the circuit court construing the second clause of the will of I. M. Davidson, and ordering partition and sale of the real estate belonging to said estate and not being appealed from, nor in any way affected by said circuit court, at that term or the term thereafter, when the sale took place, therefore stands as a solemn adjudication of that court, and cannot now be disturbed. Ashby v. Glasgow, 7 Mo. 320; Hill v. St. Louis, 20 Mo. 584; Harbor v. Railroad, 32 Mo. 425; Wilson v. Boughton, 50 Mo. 18; Downing v. Still, 43 Mo. 316; State ex rel. v. Ross, 118 Mo. 47; Hall v. Lane, 123 Mo. 633. (2) Was Monday, the 12th day of October, 1903, the day of the partition sale, one of the regular and legal days of the October term, 1903, of the circuit court of Butler county? The October term of said circuit court,

in 1903, and now, was fixed to begin on the first Monday in October. In 1903, the first Monday in October was the 5th day of that month, and if court convened on that day and began its business, and did not adjourn before the 12th to court in course, or to some day beyond the 12th, then it was a regular and legal day in said term. Proceedings of a court are known by its records only, and cannot be established by parol testimony. Milan v. Pemberton, 12 Mo. 602; Dennison v. St. Louis Co., 33 Mo. 171; Mobley v. Nave, 67 Mo. 549; Riley v. Pettis Co., 96 Mo. 318; Maupin v. Franklin Co., 67 Mo. 327; Johnson Co. v. Wood, 84 Mo. 516; Kansas City v. Railroad, 81 Mo. 296; Reppy v. Jefferson County, 47 Mo. 69; Sanderson v. Pike County, 195 Mo. 604. The records of courts cannot be contradicted by parol evidence under claim that a mistake was made in entering a matter of record. Mobley v. Nave, 67 Mo. 546. It is to be presumed that everything appearing upon the records was entered thereon by authority of the court. State v. Searcey, 46 Mo. App. 421; State v. Searcy, 111 Mo. 236; State v. McCord, 134 Mo. App. 74. (3) The sale shall take place during some day of the term of the court, and be governed by the same regulations prescribed by law for the sales of real estate under execution, notice thereof being given in the same manner by the sheriff as provided by law for such sales. R. S. 1899, secs. 4407 and 3197. A term of court continues until it is adjourned or until it expires according to the time established by law. 11 Cyc. 732; King v. Sears, 91 Ga. 577; Jasper v. Schlesinger, 22 Ill. App. 637; Railroad v. Harrel, 7 Kan. 380; Parsons v. Hathaway, 40 Me. 132; Townsend v. Chew, 31 Md. 247; People v. Bank, 53 Barb. (N. Y.) 412; State v. Pealey, 107 N. C. 808; Commonwealth v. Thompson, 18 Pa. Co. Ct. 487; DeLeon v. Barrett, 22 S. C. 412; Labadie v. Dean, 47 Tex. 90; Clegg v. Galveston County, 1 Tex. Civ. App. 58. Again, the whole term of a court is regarded by law as if but one day.

Cunningham v. Ashley, 13 Ark. 653; Dye v. Knox, 1 Bibb 573; Manchester v. Herrington, 10 N. Y. 164; Saunder v. Bobo, 2 Bailey (S. C.) 492; The Canary No. 2, 32 Fed. 536. And all acts done within the term as contemporaneous. 11 Cyc. 732. The session, of a court, means the time a court is open for the transaction of business. The Butler County Circuit Court was convened on the morning of October 12th and adjourned on the evening of October 12, 1903, to Tuesday, October 13, 1903, when the court again convened. (4) No person will be allowed to adopt that part of a transaction which is favorable to himself and reject the rest, to the injury of the one from whom he derived the benefit. Austin v. Loving, 63 Mo. 19; Packman v. Meatt, 49 Mo. 345; Chase v. Williams, 74 Mo. 437; Wilcoxon v. Osborn, 77 Mo. 628; Nanson v. Jacob, 93 Mo. 346; Boogher v. Frazier, 99 Mo. 325; McClanahan v. West, 100 Mo. 323; Clyburn v. McLaughlin, 106 Mo. 524; Lanier v. McIntosh, 117 Mo. 519; Fische v. Siekmann, 125 Mo. 180; Cockran v. Thomas, 131 Mo. 277; Hartman v. Hornsby, 142 Mo. 376; Purse v. Estes, 165 Mo. 58; McCune v. Goodwell, 204 Mo. 337; Fenwick v. Wheatley, 23 Mo. App. 644; Lawrence v. Owens, 39 Mo. App. 325; Carter v. Shotwell, 42 Mo. App. 667; Shotwell v. Munroe, 42 Mo. App. 674. Where those who are entitled to avoid a sale, adopt or ratify it by receiving the whole or any part of the purchase money, they will be estopped from subsequently setting it aside. Cases cited above. And it makes no difference whether the proceedings under which the sale occurs are voidable or wholly void. Cases cited above. When a party has taken the fruits of a judicial proceeding, he cannot be heard afterward to question it. Cases cited above. Akens v. Hobbs, 105 Mo. 127; Pockman v. Meatt, 49 Mo. 345; Loving v. Groomer, 110 Mo. 632; Landis v. Hamilton, 77 Mo. 554; Lily v. Meuhe, 143 Mo. 137. By accepting the proceeds of a sale, in whole or in part, the proceed-

ings are ratified, and the party receiving the benefits is estopped, although as to him, in the absence of ratification, the proceedings and sale would have been wholly void. Hartman v. Hornsby, 142 Mo. 368; Nelson v. Hirsch, 102 Mo. App. 498. One cannot, either in law or in equity, claim both land and proceeds arising from its sale. Nolle v. Thompson, 173 Mo. 595; Nelson v. Hirsch, 102 Mo. App. 498. The judgment of the court approving the report of sale was a final judgment from which an appeal might have been taken. Mens v. Bell, 45 Mo. 333; Bush v. White, 85 Mo. 356; Wauchope v. McCormack, 158 Mo. 660; St. Louis v. Brooks, 107 Mo. 380; Slagel v. Murdock, 65 Mo. 522; James & Ray ex parte, 59 Mo. 280; Patton v. Hanna, 46 Mo. 314; Parker v. Railroad, 44 Mo. 415. The approval of such sales rests largely in the discretion of the court, and its action in setting aside the sale in this case upon the coming in of the court, and before other interests had intervened, ought not to be interfered with, unless there was manifest abuse of such discretion. Pomeroy v. Allen, 60 Mo. 530; Goode v. Crow, 51 Mo. 212; Mitchell v. Jones, 50 Mo. 438; Rannels v. Washington U., 96 Mo. 226; Anderson v. Ragan, 105 Mo. 406; Wauchope v. McCormack, 158 Mo. 666. The confirmation or rejection of a sale of land in partition, is a matter resting largely in the discretion of the lower court, and the Supreme Court will be very slow to interfere with its action. Pomeroy v. Allen, 60 Mo. 530; Murray v. Yates, 73 Mo. 16; Akens v. Hobbs, 105 Mo. 133; Burden v. Taylor, 124 Mo. 17; Wauchope v. McCormack, 158 Mo. 666. The sale seems to have been conducted with fairness.

*David W. Hill* for respondent; *Louis F. Dinning* and *John M. Atkinson* for non-appealing defendants.

(1) As a general rule, circuit courts have jurisdiction to partition real estate, but the circuit court of Butler county had no power, authority or juris-

diction to partition the real estate of Davidson, contrary to the intention expressed in his will. The Missouri statute withdraws such power, authority and jurisdiction from the circuit court in such cases. R. S. 1899, sec. 4383. (2) The judgment of the circuit court of Mississippi county in setting aside the partition sale and all proceedings relative thereto is manifestly right and proper, but the court should have gone farther and set aside the interlocutory judgment of partition, for the reason that the circuit court of Butler county had no jurisdiction of the subject-matter, because the amended petition in partition did not state a cause of action. Such amended petition contained an exact copy of the will, which showed on its face that alienation of the property was prohibited for a period of fifteen years from the date of the death of the testator, which term has not yet expired, and the interlocutory judgment of partition, being based upon a petition which did not state a cause of action, is likewise void, being in violation of the terms of the will and the statutory laws of the State, and cannot be pleaded in bar as *res adjudicata,* nor as estoppel. Stevens v. De La Vaulx, 166 Mo. 20; R. S. 1899, sec. 4383; Lilly v. Menke, 126 Mo. 190; Ex parte Cubbage v. Franklin, 62 Mo. 364; 2 Black on Judg. (1 Ed.), p. 513, sec. 513. (3) It is an inflexible rule that any judgment rendered by a court upon a matter not in its jurisdiction is null and void, incapable of ratification, and subject even to collateral impeachment. Brown v. Woody, 64 Mo. 547; 1 Black on Judg. (1 Ed.), p. 240, sec. 240; Smith v. Burrus, 106 Mo. 97; 1 Bailey on Jur., secs. 2 and 10; Brown on Jur. (2 Ed.), secs. 3 and 21; Works on Jur., p. 32. (4) "All courts and others concerned in the execution of last wills shall have due regard to the directions of the will and the true intent and meaning of the testator in all matters brought before them." R. S. 1899, sec. 4650; West v. Bailey, 196 Mo. 517. (5) The undisputed evidence shows that

plaintiff did nothing after reaching her majority to ratify the partition proceedings. She received nothing from her curator or the corporation. Nothing was paid for the land at the sale and consequently her curator received nothing for her. By fraudulent means the partition proceedings and corporation were employed to take from her, illegally, her estate, worth at least $22,000, for thirteen and one-half cents on the dollar, and that to be paid by the corporation out of the rent of her father's estate. The corporation was formed and took the land without paying for it, and without the sanction of any court, and she is therefore certainly not estopped. Garesche v. Investment Co., 146 Mo. 436; Bank v. Kennett Estate, 101 Mo. App. 370. (6) This action assails the judgment of the circuit court of Butler county in confirming the partition sale, on the ground of fraud perpetrated on the court in the act of procuring the judgment, in this: that it was falsely reported to the court that the sheriff had received $98,752, the amount bid for the land sold, when in truth and in fact he did not receive as much as a dollar on such bid, and the circuit court of Mississippi county, therefore, properly, on this ground, set aside the judgment of the circuit court of Butler county confirming the report of the partition sale. Smith v. Hauger, 150 Mo. 444; McClanahan v. West, 100 Mo. 320; Nelson v. Barnett, 123 Mo. 570. (7) The company was not incorporated until the 14th day of October, 1903, and could not, therefore, take the title to the Davidson real estate at a sale on the 12th day of October, 1903, and the sheriff's deeds, being to a fictitious person, are absolutely void. Thomas v. Wyatt, 25 Mo. 24; Thomas v. Boerner, 25 Mo. 27. (8) The title acquired at a sheriff's sale relates back to the date of the sale, and does not date from the time the sheriff acknowledged the deed in open court. Howard v. Browne, 197 Mo. 48. (9) Neither the circuit court nor the county court were

in session on the date of the partition sale—the sheriff's deeds are, therefore, void.  McClurg v. Dollarhide, 51 Mo. 347; Wilcoxon v. Osborn, 77 Mo. 632; Roberts v. Nelson, 86 Mo. 26; R. S. 1899, secs. 3197, 4407, 4428 and 4429.  (10) The general rule is that parol evidence cannot be employed to contradict a record of a court, but fraud vitiates everything, and this suit being a direct attack on the ground of fraud upon the whole record of the circuit court, including the entry purporting to show the circuit court was in session on the day of the partition sale, we certainly had the right to show by parol evidence that the circuit judge was not at the county seat after nine o'clock on the date of the sale, but was absent from Butler county, thus showing that the record entry was false and fraudulent, and the inference is that it was made to bolster up the bogus partition sale; and we certainly had the same right to show that the record entry was false in its entirety as to show that a record entry had been improperly changed.  Sweet v. Maupin, 65 Mo. 65; Wauchope v. McCormack, 158 Mo. 660; Hardware Co. v. Building Co., 132 Mo. 454; Goode v. Crow, 51 Mo. 212.  (11) This case must be tried in this court upon the same theory upon which it was tried in the court below.  Dice v. Hamilton, 178 Mo. 89.  (12) Where it appears, as in this case, that the trust estate is being wasted, or is about to be wasted or improperly disposed of, a proper case is made out for the appointment of a receiver.  R. S. 1899, secs. 753, 1338, 1339 and 1340; Cantwell v. Lead Co., 199 Mo. 1; Youree v. Insurance Co., 180 Mo. 168; Meeker v. Iron Co., 17 Fed. 48; Miner v. Ice Co., 93 Mich. 97; Ponder v. N. Y. & L. E. Co., 72 Hun 385.  (13) No complaint is made in the motion for a new trial relative to the appointment of a receiver.  That question, therefore, cannot now be urged.  Coffey v. Carthage, 200 Mo. 629; State v. Grant, 194 Mo. 367.  (14) The Supreme Court will defer largely to the

conclusions reached by the trial court. Loan & Trust Co. v. Browne, 177 Mo. 412. (15) But if this court is satisfied that the trial court should have set aside the interlocutory decree of partition, it is the duty of this court to give such judgment on appeal. R. S. 1899, sec. 866.

GRAVES, J.—On January 3, 1895, Isaac M. Davidson departed this life in Butler county, Missouri, leaving an estate, consisting mostly of real estate, valued at something near $200,000. He was a lawyer by profession. He prepared, executed and left a will, only one clause of which has any significance in this suit. That clause reads:

"Secondly: I give and bequeath all the remainder of my estate, both real and personal, or mixed, debts and wages due me, except the law office and fixtures therein contained, to my eldest son, Dr. Ira M. Davidson, and his mother, my beloved wife, for the use hereinafter declared, and request them to hold the same without sale or disposal, for a period of at least fifteen years, and then only to be disposed of by the concurrence of all the heirs. Also to cause the houses, lots and farms, wheresoever they may be, to be kept rented and in good repair, collecting the rents and paying the same over to my said heirs according to their respective rights."

Mr. Davidson left surviving him a wife and eight children. By the fifth clause of the will he defines what he means by the terms "my heirs," there naming his wife and children. At his death most of his children were minors and three of them were yet minors when this suit was brought. The plaintiff in this suit is one of the children, and the widow and the other children are made defendants, together with a corporate defendant and two individual defendants. Under the will, the widow, Mary J. Davidson, and a son Ira M., were made executors.

The purpose of the plaintiff's suit is well describ-ed in the prayer of her petition, thus:

"Wherefore, plaintiff prays the court to cancel, set aside and for naught hold the decree of partition aforesaid and the order of sale made thereunder, set aside and for naught hold the report of sale made by the special commissioner thereunder, set aside and for naught hold the order of this court ordering said special commissioner to make and execute the deeds aforesaid, and to cancel, set aside and for naught hold both of the special commissioner's deeds above referred to as constituting a cloud upon the title of plaintiff, and to render judgment against the defend-ants, determining the title to said real estate, and quieting and confirming plaintiff's title to an undivid-ed one-ninth interest in and to all the above described real estate, and to enjoin the defendants, their officers, attorneys, agents, servants and employees from sell-ing or disposing of said real estate, or otherwise dis-sipating or injuring the same, pending the final dis-position of this cause; and that the court appoint some suitable person to take charge of said real es-tate as trustee or receiver, collect the rents and profits thereof, and pay the same over to this plaintiff and the other heirs of Isaac M. Davidson, deceased, as is provided by the terms of said will and for all other proper relief in the premises, plaintiff will ever pray."

The petition in this case charges that in Septem-ber, 1901, a certain attorney filed a suit in the circuit court of Butler county asking for a construction of the will and a sale of the property; that in January, 1902, the petition was amended, the amended petition setting out the will, describing the real estate, and asking for a construction of the will and for a sale of the real estate. In that suit Mary J. Davidson, three adult children, and four minor children, through Mary J. Davidson, appeared as plaintiffs in the petition, and

Rosa Belle Finley, *nee* Davidson, and others were defendants. The court in that case determined and ended the trust created by clause two of the will, decreed partition of the property and ordered it sold, one-half of the purchase price to be paid in cash, and the balance in one and two years, to be secured by deed of trust, or all cash if the purchaser elected so to pay before approval of sale; that under this decree on October 12, 1903, the land was sold by the sheriff as a special commissioner and was bid in for $98,752 in the name of I. M. Davidson Real Estate and Investment Company; that report of sale was made by the commissioner and deed immediately made to said company; that later a deed amendatory of the first was by said commissioner made and delivered; that the petition in said partition suit did not state a cause of action and that the judgment and all subsequent proceedings are void or voidable; that the order of partition violated the express terms of the will; that said judgment and subsequent proceedings were beyond the jurisdiction of the court making the same; that all this was without the consent of plaintiff, then a minor; that the report of sale was never confirmed by the court; that at the date of sale and at the time the property was bid off by an attorney for the corporate defendant herein, said corporation had not been organized and no title did or could pass; that at the date of sale neither the circuit court nor the county court of said county was then in session; that the judge of the circuit court was absent from the county; that the record of the circuit court showing the said judge present and court in session was false and untrue; that the probable bidders knew these facts and would not bid; that it was generally understood that no title would pass owing to the irregularities aforesaid; that $200,000 worth of real estate was sold at a sacrifice for the sum named above as the selling price; that $98,752 was a shockingly inadequate price for the

property sold; that only two attorneys bid at such sale, and parties who would have bid agreed with them not to bid and complied with the agreements; that said sale was not made in accordance with the order, viz., one-half cash and the balance in one and two years, which was prejudicial. The petition names the parties to the agreement not to bid at the sale and then further charges that the purpose of the pretended sale was to get the property out of responsible hands, those of a trustee previously appointed by the court, and place it in the hands of an irresponsible corporation, so that said estate might be dissipated and taken from the rightful owners; that the corporation defendant never had a dollar of its stock paid up; that said corporation has since been managing the property and trying to sell the same and denies that plaintiff has an interest therein.

All of the defendants except the corporation and Dalton and Lavin filed answers admitting the things charged in the petition.

The other defendants file lengthy and appropriate answers admitting some things in the petition, denying others and in addition plead certain matters of *res adjudicata* and estoppel. So far as necessary these will be mentioned and discussed in the course of the opinion. Replications in due form were filed.

The cause was taken by change of venue to Mississippi county where it was tried, a finding of facts made and a judgment entered. By the judgment, the chancellor, *nisi*, said:

"Wherefore, it is considered, ordered, adjudged and decreed by the court that the attempted sale of the above described real property made on the 12th day of October, 1903, and report of said sale made by the special commissioner thereunder, the two deeds made by the special commissioner to the I. M. Davidson Real Estate & Investment Company, the record of the circuit court of Butler county, Missouri, approv-

ing said sale and ordering said deeds made, be set aside, cancelled and for naught held.

"It is further considered, ordered, adjudged and decreed by the court that the devisees' title in fee simple to the property above described be, and the same is hereby confirmed, and forever quieted against the defendant corporation, I. M. Davidson Real Estate & Investment Company, James L. Dalton and James Lavin; that they and each of them be, and they are hereby and forever enjoined from claiming or asserting any claim, right or title to said real property adverse to said devisees.

"It is further considered, ordered and adjudged by the court that the defendants, I. M. Davidson Real Estate & Investment Company, James L. Dalton and James Lavin pay all the costs of this suit, and that execution issue."

The finding of facts is very lengthy, but by omitting the formal findings as to the relationship of the parties, the making and probating of the will, the description of the property and rental value thereof, the more material portion thereof reads:

"The court further finds that on the 4th day of September, 1901, Messrs. Phillips & Phillips and Lambert E. Walther, Esq., attorneys-at-law, filed a suit in the circuit court of Butler county, Missouri, for the construction of said will, and for the partition and sale of the above described real estate, in which cause, Mary J. Davidson and others appeared as plaintiffs, and James L. Dalton and others appeared as defendants; that afterwards, to-wit, on the 19th day of June, 1903, the circuit court of Butler county, Missouri, entered of record an interlocutory decree of partition and order of sale of the above described real estate; that by said interlocutory decree of partition and order of sale said court provided that the above described real estate should be sold by special commissioner, one-half of the purchase price in cash, balance

in one and two years, deferred payments to bear six per cent interest and to be secured by deeds of trust upon property sold, or more or all cash, at option of the purchaser if he elects, before the approval of the sale. That said decree of partition and order of sale so rendered as aforesaid, are recorded in Book S, at page 352, of the circuit court records of Butler county, Missouri. That thereafter, to-wit, on the 12th day of October, 1903, by virtue of said decree and order of sale, James R. Hogg, sheriff of Butler county, Missouri, acting as special commissioner, attempted to sell the above described real estate at public sale and the whole thereof was bid in at the price of ninety-eight thousand, seven hundred and fifty-two dollars, no part of which was ever paid to the sheriff; that the above described real estate was bid in in the name of I. M. Davidson Real Estate & Investment Company, and thereafter, to-wit, on the 22d day of October, 1903, the said James R. Hogg filed a report of said attempted sale in the office of the clerk of the circuit court of Butler county, Missouri, and immediately made out, acknowledged and delivered to some one for the I. M. Davidson Real Estate & Investment Company, a deed purporting to convey to it the above described real estate, which said deed was recorded December 1, 1903, in book 68, at page 525, and a deed amendatory thereof recorded March 25, 1905, in book 75, at page 201, of the deed records of Butler county, Missouri; that in said report and that in said deeds, it is falsely recited that the consideration for said real estate had been paid in cash, when in fact and in truth no cash or other valuable thing had been paid to the sheriff or any person for him for said real estate on the bids therefor; that the defendant I. M. Davidson Real Estate & Investment Company was not incorporated until the 14th day of October, 1903; that the statement made in the articles of incorpora-

tion of the I. M. Davidson Real Estate & Investment Company that forty-five thousand dollars had actually been paid up in lawful money of the United States, and was on the 12th day of October, 1903, in the hands of its board of directors, is absolutely false, while in fact and in truth, no part of the capital stock of said corporation was ever paid in money by any of the subscribers for the stock; that the recital in the certificates of stock issued by said corporation to the effect that the full amount of the capital stock was fully paid, was likewise absolutely false, while in truth and in fact no part of the capital stock was ever paid by the subscribers thereof.

"The court further finds that the defendant, I. M. Davidson Real Estate and Investment Company, without any authority of law or equity, issued stock to the extent of ninety thousand dollars in the name of the guardian of the minors for their interest in the real estate, and to the adults for their interest in the real estate; that said stock was absolutely worthless, having been issued by a corporation without assets and without any property whatever, and that the defendant I. M. Davidson Real Estate & Investment Company, and its officers, have, since the formation of said company, fraudulently and oppressively obtained a large majority of this stock from the adults and heirs at thirty cents on the dollar; that the defendant, Mary J. Davidson, was unduly influenced and caused to enter into the corporation in her own right and as guardian for the minors by promise and agreement on the part of Isaac H. Barnhill and William Ferguson, the managing officers of the corporation, that the corporation would immediately assume and pay a mortgage on her homestead aggregating some twenty-six hundred dollars, which indebtedness has never been paid nor has the defendant, Mary J. Davidson, been released therefrom, but said indebtedness and mortgage on her home-

stead has been used oppressively to unduly influence her in her relations with the defendant corporation; that the defendant corporation in purchasing its own stock, used the rents and profits of the above described real estate to pay for said stock which has been issued to minors as well as adults.

"The court further finds that on the 12th day of October, 1903, the date of the attempted sale of the above described property, the circuit court of Butler county, Missouri, was not in session, and the judge thereof was absent from said county while the attempted sale was being made, and that the county court of Butler county, Missouri, was not in session on the 12th day of October, 1903, and that the recitals in the special commissioner's report of the sale and the deeds made thereunder, and all other proceedings of the court relative thereto, were false and fraudulent.

"The court further finds that the record entry of the circuit court of Butler county, Missouri, purporting to show that the circuit court of Butler county, Missouri, was in session on the 12th day of October, 1903, is false and a fraud upon the rights of the devisees of Isaac M. Davidson.

"The court further finds that the price at which the above described real estate was bid in was shockingly inadequate and a fraud upon the rights of the devisees of Isaac M. Davidson, deceased. That the attempted sale was unjust and unfair to the devisees of Isaac M. Davidson, deceased, in this; that the property was not sold to its best advantage, there having been practically three or four bidders only.

"The court further finds that the officers of the I. M. Davidson Real Estate & Investment Company, for the purpose of disposing of and dissipating said estate advantageously to the officers of said corporation, took possession of the above described real es-

tate under said deed, immediately after the attempted sale thereof, and ever since that time converted the rents and profits thereof to their own use; have failed to account therefor to the devisees of Isaac M. Davidson, deceased, and are selling and dissipating said real estate to great injury to the said devisees.

"The court further finds that the curator, W. W. Turner, was not in fact a curator for the minors, but a mere figurehead for the defendant corporation.

"The court further finds that the nine devisees of Isaac M. Davidson, deceased, are the owners in fee simple in equal shares of the above described real estate, and that they are entitled to a decree of this court quieting the same against the defendant, I. M. Davidson Real Estate & Investment Company, and that said devisees are entitled to a restraining order against the I. M. Davidson Real Estate & Investment Company, to restrain said corporation from asserting any title to the above described real property adverse to said devisees, and restraining said corporation from interfering with the possession of said property, or any other right of the devisees thereto.

"The court further finds that all the proceedings relative to the attempted sale of the above property on the 12th day of October, 1903, from the time of the crying of the sale until this time, are tainted with the frauds of the I. M. Davidson Real Estate & Investment Company and its officers."

The court also appointed a receiver to collect the rents, and look after the property pending this suit, and made an order restraining the corporation defendant, and defendants, Dalton and Lavin, from further collecting rents or otherwise controlling said property.

In due time and proper order the cause has been appealed here.

The plaintiff, as well as the corporation and

Dalton, appealed, but the plaintiff did not perfect her appeal. Lavin did not appeal. Plaintiff's counsel, however, urge that this being an equity case, this court being possessed of the cause, can see that equity is done by its judgment. The trial court did not annul the interlocutory judgment in partition, and this is the question complained of by the plaintiff.

As to all other matters, the judgment entered was satisfactory to plaintiff. The record is voluminous, but we can and will discuss the facts found by the court, together with the applicable evidence touching the fact, in the course of the opinion, on the points made by the defendants. This sufficiently states the general outlines of the case for a discussion of the various contentions made, when in connection therewith the applicable evidence in support of the findings of fact is considered.

I. A question might be raised as to whether or not the refusal of the chancellor *nisi* to annul and cancel the interlocutory decree in partition is properly here for consideration. The defendants do not question this part of the decree entered by the circuit court and the plaintiff has not appealed. However, the question is argued upon both sides in this court, and in view of things presently to be stated, we think it best to go into the question. From the evidence it appears that I. M. Davidson left a large estate, consisting of town property (vacant lots and lots with buildings thereon), farms and considerable personal property. There were no debts worth mentioning. The real estate alone in 1903 was worth $200,000 or more under the evidence. It is clearly inferable from the proof that neither the widow nor the heirs possessed much business judgment. The executors named in the will made poor progress in the management of the estate, and in 1897, voluntarily quit the job, and James L. Dalton was first made receiver and

shortly thereafter trustee of the property. When he took it there were delinquent taxes to the amount of $3000 or perhaps a little more, and a judgment of $5000 against the estate. This vast estate was then indebted about $8000. Dalton, as trustee by order of the circuit court, borrowed money to improve two pieces of the property. He borrowed to this end, $22,-500, but as often happens, it required some $5000 or $6000 more to complete the work, and Dalton advanced it. Dalton increased the earning capacity of the estate from $250 per month to $1000 per month, or nearly so.

In 1901, whilst the estate was in the hands of Dalton, all of the heirs, except Rosa Belle Finley, joined in a petition asking the court to construe the will of I. M. Davidson, and to hold, among other things, that said second clause of the will was void for vagueness and other reasons assigned, and further to partition the lands.

In this case the widow and adult heirs were plaintiffs in person, and the minor heirs, four in number, prosecuted the suit in the name of Mary J. Davidson, their guardian and curator. Mrs. Finley was made defendant, as were also James L. Dalton, and the holders of mortgage liens upon the lands. This case, after all necessary pleadings were filed and the issues duly made up, finally reached a hearing, which resulted in an interlocutory decree in partition at the June term, 1903, of said Butler County Circuit Court. Under this decree the land was sold in October following.

The evidence does not disclose fraud in the concoction of this interlocutory decree. The only thing appearing herein is some testimony to the effect that one William Ferguson, who had loaned Jay Davidson some $12,000 on his interest in the estate, counseled and advised the heirs and widow to bring the suit. They did bring the suit and did not appeal from the

judgment, which judgment, however, was in accordance with their desires as expressed in the petition. Nor did defendants appeal in that case from this interlocutory decree.

It is urged, however, that the petition stated no cause of action in this, that it pleads the will and the will shows that there.could not be a sale of the property for fifteen years, and hence the judgment rolls show that the circuit court exceeded its jurisdiction, and the judgment is void or at least voidable. We are not impressed with this contention. That the circuit court has jurisdiction in partition proceedings goes without question. That courts of chancery, and a circuit court is such, have power to construe wills and declare the character of a trust created therein, or say whether or not a trust has been created by the will, we think equally as well settled.

In Hamer v. Cook, 118 Mo. l. c. 489, it is said: "It was a part of the ancient and well defined jurisdiction of the courts of chancery to construe wills and declare the limitations of trusts created thereby, and the creation of our county and probate courts has not divested them of this power." This case received the approval of this court in the later case of Heady v. Crouse, 203 Mo. l. c. 113.

We conclude, therefore, that the circuit court of Butler county had complete jurisdiction over both the parties and the subject-matter. If it erred in its judgment as to what construction should be given to the will in question, that question cannot avail the plaintiff in this case. That error could have been corrected upon appeal. It is true the petition in this case is a direct and not a collateral attack on this interlocutory judgment, but unless we can say there was fraud in the concoction of the judgment we should not disturb this interlocutory decree. It is argued that the action of Ferguson in urging the bringing of the suit, and his subsequent conduct thereafter as president of the

corporation defendant, in practically absorbing the whole estate for himself, and of one Barnhill, secretary of the corporation defendant, by acquiring the stock in such corporation, are evidence of a conspiracy from the beginning, but we hardly feel that the facts before us justify this conclusion. We agree with the learned chancellor below, that the conduct of Ferguson's company, the defendant corporation, has been reprehensible from the date of its birth. Many things point to the fact that this corporation defendant was conceived in sin and born in iniquity. This is judging by its conduct since its organization, which was some time after the interlocutory decree in the partition suit. There was no error in the action of the trial court in refusing to set aside the interlocutory decree in the partition suit, although attacked in the bill in equity herein.

The heirs long prior had made similar attempts to partition the land, but the cases were dismissed, or disposed of without trial. At least two previous attempts had been made.

This contention of the plaintiff is therefore ruled against her.

II. The plaintiff in this case also attacks in her bill the validity of the sale, the validity of the order approving the sale, and the deeds made thereunder. It is said the property sold for a grossly inadequate price, and this would appear to be true, for from the evidence there were really only two or three bidders— really only two, as to most of the property. There seems to have been two syndicates or combinations of individuals, who were undertaking to buy the property; one set afterward became the defendant corporation, incorporators, and were represented by their attorney, as a bidder, and the other syndicate of ten men, had their attorney, who was one of their number, bid. This latter syndicate had agreed among

themselves not to bid over forty-five per cent of the value of the property, and got only one house and lot for $1000, which under the evidence was worth not less than $2500. They did not take a deed to that, because the corporate defendant gave them $500 for their bargain, and took the property. The evidence discloses that there was a pretty general consensus of opinion to the effect that the interlocutory judgment was invalid, and the air being full of such rumors might have deterred bidders, but be that as it may, the corporate defendant got about thirty-five farms and seventy-five or more pieces of town property, reasonably worth $200,000, for less than $99,000. This sale took place on October 12, 1903, and the property was stricken off and sold to the defendant corporation, although at that time it had not been incorporated. The articles of association were acknowledged upon that day, but it was not issued a charter by the Secretary of State until October 14, 1903. It also appears in evidence that at the time of its incorporation not a dollar of the capital stock of $90,000 had been paid, and not a dollar has since been paid in by the incorporators or stockholders.

The order of sale provided for part cash or all cash as the purchaser might elect, before approval of the sale. The sheriff who made the sale as a special commissioner under an order of the court, made a report of sale, not as special commissioner, but as sheriff, as we read the record. His said report begins thus: "I, James R. Hogg, Sheriff of Butler County, Missouri, beg leave to respectfully report that, in pursuance of an order of sale," etc., and concludes thus: "All of which is respectfully submitted, James R. Hogg, Sheriff of Butler County, Missouri." Mr. Hogg, as the court's special commissioner, nowhere makes a report of sale, so far as this very voluminous record shows.

In the report as sheriff he does say that he had been paid the amount of the bid by the defendant corporation, and that said defendant had elected to pay cash, although it did not have a cent in its treasury. This report of sale was accompanied by receipts for the money signed up by the parties interested, the receipts of the four minors being signed by Mary J. Davidson, guardian curator, although never a cent passed into her hands from the sheriff or any other person for said minors. The order approving the sale was based upon the recitals in the report of sale. The amount going to the plaintiff was $6731.98, and the same to each of the other three minors.

There was evidence pro and con upon the fact as to whether or not Judge FORT was actually in the county seat at the date of the sale. No witness saw him at the courthouse that day. The court record shows that court adjourned from Friday to Monday, and Monday was the day of sale. The testimony also shows that Judge FORT came and left the county seat by rail, and there were but two trains a day, one leaving Poplar Bluff in the morning at 8:45 and the other coming to Poplar Bluff at about six in the evening. By at least one of plaintiff's witnesses, it was shown that Judge FORT was not in the courthouse to open court that day or at any time during the sale. These are the questions as to the validity of the sale, and the order approving the sale.

Defendants contend that as there was no question about Judge FORT being present on October 22d when the report of the sale was approved and the first deed was made, and as this was the final judgment in partition, and no appeal was taken, the matter is closed. Plaintiff urges as to the judgment approving the sale, that there was fraud in the concoction thereof, and that inasmuch as she attacks that judgment in a direct equitable proceeding she is entitled to have the judgment below on that question affirmed.

There is no question that plaintiff's petition attacks this order or judgment approving the sale on the ground of fraud in its procurement. Nor is there any question as to her having brought her action within a short time after the date she became *sui juris*.

That judgments can be attacked in an equitable action to set them aside on the ground of fraud in the procurement thereof, there can be no question. [McClanahan v. West, 100 Mo. l. c. 320; Nelson v. Barnett, 123 Mo. 570; Smith v. Hauger, 150 Mo. 444.]

In this case it was a fraud perpetrated upon the court when the commissioner reported to the court that the defendant I. M. Davidson Real Estate & Investment Company had paid him over $98,000 in cash, when he had never received a cent.

In the interlocutory judgment in the partition suit, James L. Dalton, one of the appealing defendants in this case, had a large allowance as a lien upon the estate, and from the order approving the sale it appears that he made and gave to the commissioner a receipt for $28,618.94, when in fact he had never received a cent from the commissioner, and this was a fraud upon the court in the procurement of the order of approval. On October 21st, and prior to the order of approval, the defendant corporation gave Dalton a deed of trust on the lands, not yet deeded to it, for the same sum, and it appears that said corporation had previously agreed to assume the debt, thus showing that said corporation had full knowledge that fraud was being perpetrated upon the court in getting its sale approved through the false report of the commissioner. Barnhill, defendant corporation's secretary, contributed to the fraud by giving his receipt for cash which was never received. And so we might go through with each item of the distribution said to have been made by the sheriff, but which distribution was never in fact made.

Such conduct was a fraud upon the minors involved in that suit, and they were each interested to the extent of nearly seven thousand dollars, notwithstanding the low price obtained at the sale. The order of approval recites that the cash had been reported as received by the commissioner, and had been by him paid out on the receipts of the parties entitled thereto. This fraud perpetrated upon the court in the very concoction and make up of this judgment is of itself sufficient to sustain the action of the chancellor, *nisi*, in vacating the same, and in holding for naught the report of sale, and the deeds made under the order or judgment aforesaid.

It is argued, however, that the corporation had been organized to take over the estate, and that the Davidson heirs were all interested in the organization. It is true that it appears that Ferguson induced the widow for herself and as guardian for the minors to agree to organize a corporation, and the widow became an incorporator, but she had no authority in law under the evidence in the case to hazard the rights of these minors by such an agreement.

The later relationship between these minors and defendant we will discuss under another proposition in the case.

III. The trial court found as a fact that the circuit court of Butler county was not in session on the day of sale, and also that the county court was not in session at said time. There is evidence upon which a finding might be made either way upon that question. As to this finding, if it be material, which we discuss later, we shall give deference to the judgment of the chancellor, *nisi*.

Defendants contend (1) that the record shows the presence of the judge and all officers, and the opening of the court on that day, and this record imports verity, and (2) that inasmuch as the court at its October term was in actual session transacting business

both before and after that date (October 12th, the day
of sale) said day was a day whilst said court was in
session.  An ingenious argument is builded up on the
latter proposition.

(a)  Going to the first point just above suggested,
it may be said that in collateral proceedings, it is cer-
tainly true that parol evidence is not admissible to
impeach the court record.  In an ejectment suit, where-
in it was sought to attack the record showing the ad-
journment of court in case of Mobley v. Nave, 67 Mo.
l. c. 549, Hough, J., said: ''Parol testimony was of-
fered by the defendant to show that the court was in
session on the 18th of September, 1863, but it was re-
jected by the court, and properly so.  If it can be
shown by parol that a court was in session on a day
when the records of such court show that it stood ad-
journed on that day, we see no reason why it cannot
also be shown by parol that a court was not in session
when its records show that it was in session.  The
confusion and injury which might ensue upon the ad-
mission of parol testimony for such a purpose, in a col-
lateral proceeding, is manifest.  Proceedings in a court
of record can only be proved by the record.  [Medlin
v. Platte County, 8 Mo. 235; Milan v. Pemberton, 12
Mo. 598; Dennison v. County of St. Louis, 33 Mo. 168;
Maupin v. Franklin County, 67 Mo. 327.]''  But he
likewise adds: ''Mistakes in the record, as to the date
of the sittings of a court, or of any proceeding therein,
must, like other mistakes in the records of such courts,
be corrected by a direct proceeding for that purpose.''

It should be borne in mind that in this case the
plaintiff charges the falsity of this record.  This is
a direct proceeding attacking the court proceedings,
so far as they relate to this case from the interlocutory
judgment in partition down to the making of the deed.
But be the law as it may upon this question, we need
not directly pass upon it here in order to sustain the
trial court's finding.  Both  plaintiff  and  defendant

offered parol evidence upon the question. Plaintiff's evidence went in without objection, as also did that of the defendant. It is too late now for the defendant to urge the incompetency of that method of proof. They proceeded below upon the theory that it was competent, and cannot change their attitude here and thereby convict the lower court of error.

(b) Passing now to the second contention. Many authorities are cited to the effect that a term of court is continuous from the day of its opening until the final day of its adjournment. In other words, if the court should begin on the 5th of October, and then adjourn over until the 15th, and then continue in session until the 20th, and again adjourn over until December 1st, and continue in session until December 15th, when it finally adjourned the October term, there is no question about these different sittings being at the October term of the court. But that is not the question here. We must go to the statutes. By section 4407, Revised Statutes 1899, which applies to partition sales, it is provided, among other things: " . . . and the sale shall take place during some day of the term of the court, and be governed by the same regulations prescribed by law for sales of real estate under execution, notice thereof being given in the same manner by the sheriff as provided by law for such sales."

Section 3197, Revised Statutes 1899, relates to execution sales, and upon the question of time it says: "When real estate shall be taken in execution by an officer, it shall be his duty to expose the same to sale at the courthouse door, on some day during the term of the circuit court of the county where the same is situated."

The nearest case which we find in our reports is the case of Sarpy v. Detchemendy et al., 31 Mo. 196, which case has never been cited from that day to this. There the judge of the court did not arrive on the first day of the term, and under the statute the court

was adjourned over from day to day until the evening of the third day, when, of course, the term elapsed. During these days the officer sold a large tract of land and the sale was set aside. In that case, Scott, J., used the following pertinent language: "This is the first instance in which real estate in Missouri has been sold by a sheriff under such circumstances. Our books of Reports furnish no case in which such a sale has been made, nor do our memories recall any such proceeding. Had the opinion prevailed that such sales were authorized by law, they would have been made, as the lapse of the term of the circuit court is a thing of no unusual occurrence. If such a sale was tolerated, it would lead to a great many abuses. The law directs sales of real estate to be made during the terms of the circuit court, because, on such occasions, the people of the county are assembled, or at least more of them than at any other time, with the view of remaining together and transacting their business. The absence of the judge is frequently anticipated; it is known that a court will not be held. The people may assemble on the first day of the term, and learning that there will be no court, they will disperse immediately. Now if a sale should be advertised to take place on the third day, what a door under these circumstances would be opened to trick and management for sacrificing men's estates."

Under the evidence in this case the court adjourned from Friday until Monday. By section 1604, Revised Statutes 1899, it is provided: "If, at any time after the commencement of a term, it happen that the court shall not be held according to its adjourument, it shall stand adjourned from day to day, until the evening of the third day."

Under this statute, if Judge Fort did not appear and open his court on October 12th, the court stood adjourned from day to day until the evening of the third day, at which time the term would elapse.

Davidson v. Real Estate and Inv. Co.

But be this as it may, we are of the opinion that when the Legislature said that such sale should be made "on some day during the term" it meant some day when the court was in actual session for the transaction of business, and not some day of vacation between two portions of the term. According to defendants' contention had the court adjourned from Friday, the 9th of October, to Tuesday, the 13th of October, yet this sale on the 12th would be good. Such is not the spirit of the statute. Judge Scott has given one reason in the opinion supra, but there is another reason for requiring the court to be in session, and that is, that during such sales questions might come up which would require the immediate action of the court, as all who have had experience upon the *nisi prius* bench know.

The suggestion of Judge Scott upon the reason for the statute, has been made in other cases in this State. In Mers v. Bell, 45 Mo. l. c. 335, Wagner, J., said: "Now, the statute provides that when real estate shall be taken in execution by any officer, it shall be his duty to expose the same to sale at the courthouse door, on some day during the term of the circuit court of the county where the same is situated. [1 Wagn. Stat. 609, sec. 42.] This is the general rule, and is founded in justice and wisdom. The sessions of the circuit court attract people from all parts of the county, and sales at the courthouse, whilst that court is holding its term, conduces to competition in bidders." The very purpose of the statute as found by Judge Wagner would be defeated, if a sale could be held on some day between two portions of the same term.

Under the findings of fact, the circuit court of Butler county was not in session on the day of this sale, and no such sale could have been made.

IV. The sale was void for another reason, because made in violation of the order of sale. Under that

order at least one-half had to be paid in cash, and this was not done. The order was in no way complied with by the commissioner. We do not mean that the adults mentioned in a partition sale may not give their receipts for their shares in a partition sale by some arrangement with the purchaser, but the guardian and curator of a minor, with no direction whatever from a probate court, can't give her receipt for nearly $28,000, the money of her wards, and thus secure, with the assistance and confederation of the adult heirs, and other parties interested as lienors in the fund, an approval of a sale made in violation of the order of sale. When they all acted together, as they did in this case, to deceive the court in order to secure an approval of the sale, such conduct cannot bind the minors, and is a fraud upon them. As to them, at least, the cash should have been in the hands of the sheriff. But in this case we have the defendant corporation, the defendant Dalton, the president of the corporation, Ferguson, and the secretary, Barnhill, all joining with the widow and other parties in inducing the court to believe that the cash belonging to the minors had been received and paid. It took the concerted act of all to perpetrate the fraud upon the court. We mention Ferguson because his firm had a claim against the estate and receipted therefor.

V. There is yet another reason for holding that there was no valid sale on October 12th. The sale was made to the corporation defendant herein, as shown by the report of sale. There was no such corporation at that time. It had no power to act in any way at the date of sale. It had no power to appoint an agent to purchase for it at the sale. It did not become a legal entity until two days after the sale. At the day of sale said corporation was only in embryo, and didn't receive the breath of life and being until after the sale. Neither dead men nor unborn infants

can become purchasers at execution sales. As said by Mr. Freeman in his work on Executions (3 Ed.), vol. 2, sec. 292, p. 1690: ''The purchaser must have capacity to receive and hold real estate.''

Of course, the promoters of defendant might have had some one bid the property in, and afterwards transfer the bid to the corporation when it came into existence, and had the deed made to the corporation, but this was not done. The property was not stricken off and sold to the attorney who did the bidding, so that the sheriff might have some real person to look to for the bid. The sheriff must sell to some person of whom he can then and there demand the amount of his bid, and if not paid, he can resell to another. We shall not go further. The trial court was right in setting aside the sale, the order approving it and the deeds, unless it be for another matter presently to be considered.

VI. The corporation defendant, and defendant Dalton, pleaded an estoppel. They plead that Mary J. Davidson, guardian and curator for the plaintiff and other minor heirs, agreed for herself and the said minors to organize the defendant corporation and take over the lands at the sale, and to receive stock of the corporation for their respective shares; that in pursuance of such agreement with Ferguson, Barnhill, and other incorporators, the defendant corporation was organized, and did purchase the said property, and did afterward issue stock in the sum of $10,000 to the guardian and curator of the plaintiff, which stock said guardian and curator still holds.

A little history of the corporation defendant may not be amiss here. At its organization, one Isaac H. Barnhill subscribed for four hundred and ninety-nine shares. It is claimed that four hundred of these shares were held by him in trust for the minors. The articles of association say no such thing. Nor is there any order of the probate court authorizing such subscrip-

tion. Nor did either Barnhill or Mary J. Davidson, the then guardian and curator, have any legal right to so subscribe for such shares. But we have diverted from the trend of our thought as to the conduct of the defendant corporation. After its organization, Ferguson, who was the alleged owner of practically three shares of the estate, took two hundred and ninety-nine shares, Mrs. Davidson, one hundred shares and W. W. Turner, one share. Ferguson was made president and Barnhill secretary. They succeeded in getting Mary J. Davidson out of the position of guardian and curator of the minors and W. W. Turner appointed, and the conclusion reached by the chancellor, *nisi*, to the effect that said Turner was not in fact a guardian and curator of the minors but a mere figurehead for the defendant corporation, is well founded in the evidence.

The corporation collected as rents about $12,000 per year from 1903 to 1908, the date of the decree, *nisi*. It also collected, each year, several thousand dollars on the account of sales. Ferguson, the president, drew $1200 per year; Barnhill, the secretary, $1200 per year; a bookkeeper, $420 per year. An attorney, $100 per year (extremely reasonable when compared with the officials), and office rent, $120 per year. All this in connection with the collection of $12,000 in rents, watching the houses, the farms and the vacant lands.

The evidence conclusively shows that neither Mary J. Davidson nor W. W. Turner, respectively guardian and curator of the minors, ever had or held a cent of cash belonging to these minors, yet Turner, who says his business in the probate court was attended to by the corporation, gets an order of the probate court to invest $6731.98 in one hundred shares of the corporation stock for this plaintiff.

The corporation, although receiving each year the amounts above mentioned, always managed to come out about even at the end of the year as between

receipts and expenses. During this time the corporation paid Mrs. Davidson money ranging from $50 to $100 per month to support the minors, but the bookkeeper of the corporation says that whilst this was done, the said Turner would at times get orders from the probate court to sell shares of stock belonging to the minors at thirty cents on the dollar to cover these payments to the widow for the minors. The shares were paid for by the corporation, but afterwards reached Ferguson and Barnhill. We shall not go into the transactions between the widow and the corporation on her own personal account. The testimony shows that after plaintiff had reached her majority she had never received a share of stock or other thing from the corporation. Just how much of the stock, claimed to be hers, was transferred to the corporation at thirty cents on the dollar does not clearly appear from the record. Certain it is, however, that since reaching her majority plaintiff has done nothing to ratify the sale or to estop her. Upon these facts defendants say she is now estopped from questioning this sale.

That the agreement of Mary J. Davidson with the other promoters to put the shares of these minors in the estate of their father into this corporation is void, there can be no question. No authority of the probate court is shown for that act of hers, and this accounts perhaps for having her removed, so that something might be done toward getting sanction from the probate court. We care not what be the order of the probate court as to investing $6731.98 of plaintiff's money in stock of the corporation; if, as a matter of fact, plaintiff had no such money in the hands of her guardian, it could not be done.

In our judgment, the plea of estoppel is not sustained by the evidence.

VII. It is urged that the trial court erred in appointing a receiver. This alleged error is not found

in the motion for new trial, and is therefore not a matter for consideration here.

We do not deem it necessary to go further. The conduct of the defendant corporation and its officers has been reprehensible in the extreme. A valuable estate is being frittered away, as far as the minors are concerned. The price paid was inadequate in the first place, and irregularities and fraud crop out at nearly every turn in the proceedings after the date of the interlocutory decree. By the interlocutory decree, Dalton and all parties having legitimate claims against the proceeds of sale are fully protected. The judgment of this court holding the interlocutory decree good, will disarm people who may be disposed to say that no title will pass by a sale thereunder, and upon a resale there will be better opportunity to obtain fair prices. The circuit court of Butler county can renew its order of sale, and in so doing, could modify it, if thought best, to the end that a fair price may be obtained from the property. In this way all who deserve protection at the hands of a court of conscience will be protected.

The judgment of the circuit court of Mississippi county should be and is affirmed. All concur.

## OPINION ON MOTION TO MODIFY JUDGMENT.

GRAVES, J.—Appellant, James L. Dalton, has filed a motion to modify the judgment of this court in affirming the judgment, *nisi,* as has also the respondent, Laura Carter Davidson. Of these in their order.

I. The portion of the decree which is affirmed and of which Dalton complains, reads: ''It is further considered, ordered, adjudged and decreed by the court that the devisees' title in fee simple to the property above described be, and the same is hereby confirmed, and forever quieted against the defendant corporation, I. M. Davidson Real Estate & Investment Company,

James L. Dalton and James Lavin; that they and each of them be, and they are hereby and forever enjoined from claiming or asserting any claim, right or title to said real property adverse to said devisees.''

Upon an examination of our opinion, wherein we set out the material portions of the findings made by the chancellor, *nisi,* we find that, as to this point, the chancellor said: ''The court further finds that the nine devisees of Isaac N. Davidson, deceased, are the owners in fee simple in equal shares of the above described real estate, and that they are entitled to a decree of this court quieting the same against the defendant, I. M. Davidson Real Estate & Investment Company, to restrain said corporation from asserting any title to the above described real property adverse to said devisees, and restraining said corporation from interfering with the possession of said property, or any other right of the devisees thereto. The court further finds that all the proceedings relative to the attempted sale of the above property on the 12th day of October, 1903, from the time of the crying of the sale until this time, are tainted with the frauds of the I. M. Davidson Real Estate & Investment Company and its officers.''

In the original opinion, we said: ''By the interlocutory decree, Dalton and all parties having legitimate claims against the proceeds of sale, are fully protected.''

By the interlocutory decree of the Butler County Circuit Court, Dalton was allowed a given sum for his services and for money advanced by him to the estate. This sum was made a lien upon the real estate of the estate, and to be paid out of the selling price. It was not our purpose to change the terms of the interlocutory decree. Nor, when we examine the finding of facts made in the case at bar, and quoted supra, does it appear that the circuit court trying the case at bar proposed such a decree. The decree itself

would seem to go further than the court's finding, and further than we intended. At least the finding, which is a part of the decree and judgment, and the portion of the judgment above quoted, makes the matter somewhat uncertain, and to the end that there should be no uncertainty it should be modified so as to meet the views above expressed, as well as the views expressed in the original opinion. That portion of the decree above quoted will therefore be modified so as to thus read: "It is further considered, ordered, adjudged and decreed by the court that the devisees' title in fee simple to the property above described be, and the same is hereby confirmed, and forever quieted against the defendant corporation, I. M. Davidson Real Estate & Investment Company, James Lavin and James L. Dalton, except that interest and lien given the said Dalton by the interlocutory decree, so long as such decree stands in the circuit court of Butler county; that the said I. M. Davidson Real Estate & Investment Company, James Lavin and James L. Dalton, and each of them be, and they are hereby and forever enjoined from claiming or asserting any claim, right or title to said real estate adverse to said devisees, except as above stated."

The judgment and decree as thus modified, clears up any uncertainty and accords with what we undertook to express in the latter part of the original opinion.

II. It developed in the evidence in the case at bar, that Dalton had been allowed in the partition suit $150 per month for his services. It was also proven that Dalton whilst acting as trustee had bought the interests of two of the devisees for $8000 and had sold them for $15,000, thus clearing $7000 on the deal. The plaintiff, in her motion, asks us to modify the interlocutory judgment in the partition suit so as to cut down Dalton's allowance for services, and to charge him with this seven thousand dollars. Counsel miscon-

ceive the case we have before us. The case at bar is an action to set aside the judgment of the circuit court of Butler county, because of fraud in the concoction of that judgment. The circuit court of Butler county construed the will, declared that no valid trust had been created thereby and entered first an interlocutory judgment of partition and order of sale. Afterward it approved the report of sale and entered its final judgment. This entire judgment was attacked for fraud in the present case, which is a direct proceeding in equity to set the same aside. The trial court held that there was fraud in the proceeding occurring after the interlocutory judgment, but that there was no fraud in the procurement of this interlocutory judgment. In these views of the trial court we concurred. There was no fraud in the proceedings thus far, but the fraud began thereafter.

Had there been an appeal from this interlocutory judgment, or from the final judgment, then we could review the matters urged in this motion, but there was no such appeal, and in the case at bar, the only thing we can do as to this interlocutory judgment is to set it aside on the ground of fraud in its concoction, or in the absence of such fraud, permit it to stand. The latter we have done, so that the original partition suit stands in the circuit court of Butler county with an interlocutory judgment only. That case is not now before us and never has been before us. The case we have is simply one attacking the judgment in the partition case. It should be remembered that in the partition case after the affirmance of the judgment in this case, there is only an interlocutory decree and not a final decree. As to what powers the circuit court of Butler county has as to this simple interlocutory decree, it is not proper for us to say in this case. We can only discuss that question, if the partition case ever reaches this court. For the present, the circuit court of Butler county will have to wrestle with all

questions pertaining to its duties relative to the interlocutory decree. We can only say that there was no fraud in the concoction thereof, so far as this record is concerned, and protect the interest of Dalton thereunder so long as it stands.

III. We are asked to modify the order of sale. This we cannot do. The trial court in Butler county will at this late date have to renew its order in that regard, and should be permitted to use its untrammeled judgment as to the terms of the order made. Nor should we give any directions to the receiver appointed by the trial judge in the case at bar. He is the receiver of that court and not of this. His actions must be reported to the court appointing him and not here. From what has been said it follows that Dalton's motion to modify will be sustained in manner and to the extent above indicated, and the original judgment as thus modified is affirmed. The motion of plaintiff to modify is overruled.

Let the modified judgment be affirmed. All concur.