MARY J. DAVIDSON et al., Appellants, v. I. M. DAVIDSON REAL ESTATE & INVESTMENT COMPANY and ISAAC BARNHILL, Appellants; and JAMES L. DALTON, WILLIAM FERGUSON and JAMES LAVIN, Respondents.

Division One, April 8, 1913.

1. PARTITION: Allowances of Probate Court: Notes and Mortgages as Additional Security: Res Adjudicata. Where claims were allowed against decedent's estate by the probate court, and directed to be paid in the interlocutory judgment in partition, and after the real estate was sold in partition the claimant took notes from the purchaser secured by deeds of trust on the land so sold, a subsequent judgment setting aside the sale in partition and adjudging the notes and deeds of trust invalid and void, did not affect the validity of the original claims, if in fact they were not merged into the notes and deeds of trust, but the claimant held on to and did not surrender them, but only took the notes and deeds of trust from the purchaser as additional security. Being still valid, the court in a corrected interlocutory judgment in partition should allow them and direct their payment out of the proceeds of the sale of the lands.

2. JUDGMENTS: Bounded by Pleadings: Res Adjudicata: Partition. Judgments cannot be broader than the issues made by the pleadings. Though the language of a decree setting aside a sale in partition may seem to indicate that a claim allowed against the estate was for naught held, yet if the issues made by the pleadings only attacked the notes and deeds of trust given by the purchaser to the claimant and the decree set them aside, it will not be held that such judgment of cancellation also set aside and for naught held the valid claim allowed

and adjudged by the interlocutory decree therein. If the validity of the claim itself was not involved in the decree setting aside the sale in partition, its validity is still open for consideration when the court comes to make a modified interlocutory decree.

3. PARTITION: Cancellation of Final Judgment: Status of Interlocutory Judgment. Where the final judgment in partition approving the sale of the property, was attacked by the heirs by a separate suit in equity, charging it was obtained by fraud in its concoction, and that charge was sustained and the judgment set aside, the interlocutory judgment being left unaffected by the decree, the partition suit was still pending as if no final judgment had ever been rendered, and all the parties were left by the interlocutory judgment in possession of all the rights they would have under an interlocutory judgment in any other partition case. Being interlocutory it remained interlocutory, subject to correction and alteration, and no allowance or adjudication by it became *res adjudicata.*

4. ————: Purchase of Interest by Trustee: Presentation of Deed: Fiduciary Relation. The presentation by the trustee under the will of deeds showing he had purchased the interests of two heirs does not alone entitle him to participate in the proceeds of the estate. The fiduciary relation being shown, it devolves upon him to show the fairness of the transaction, the burden shifting to him to establish adequacy of consideration and that he did not take advantage of the devisees; and if the evidence shows that he obtained property worth $15,000 for $8,000, the deeds should be set aside, and he allowed a lien on their interest for the amount actually paid them, with six per cent interest.

5. ————: Trustee: Services. Where the evidence shows that the services of the trustee under the will were worth $50 a month, the court should modify its original interlocutory decree in partition which allowed him $150 per month.

6. ————: ————: Advancement for Benefit of Estate. The trustee under the will should be repaid in the partition suit the money he advanced for the benefit of the estate. And where there was final judgment and sale, and he accepted a note from the purchaser, secured by a deed of trust on the land, and that sale is uprooted and the final judgment set aside as being obtained by fraud, the debt itself still exists, and should be allowed.

7. ————: Void Sale: Sale of Interest by Widow to Illegal Purchaser. The sale by the widow of her stock in the corporation organized to purchase the land at the partition sale, which was set aside for fraud, did not in law carry her title to the estate property.

8. ————: **Estoppel: Officers of Corporation: Not Nominal Parties.** The president and secretary of the corporation who were present and managed the defense for it in the suit by the heirs to set aside the final decree in partition and to divest it of all title to the real estate which had been conveyed to it as a result of that void sale. were so far privies in interest as to be bound by a judgment annulling the sale and divesting the corporation of the properties; and if in that suit they set up no claim in themselves to the interests of two of the heirs, but aided and abetted the corporation in claiming those interests, they are estopped to assert that they are the owners thereof.

9. ————: **Services of Employee of Tortfeasor.** Where a corporation was a tortfeasor and as such wrongfully in charge of the estate, an employee of the corporation should not be allowed in the partition decree for his services in managing the estate.

10. ————: **Liens: Effect of Setting Aside Sale.** Liens on the interest of heirs acquired, for money advanced, prior to the time the property was ordered sold under partition, should be allowed in the corrected judgment, although the final judgment and sale thereunder were set aside for fraud, and the title divested out of the corporate purchaser which had given notes for the amount of the debts and secured them by mortgages on the properties. And though these pre-existing liens were owned by the officers of the corporation, it was not inconsistent for them in the suit to set aside the partition judgment, to assert title in the corporation, and now say, after that title has been held to be invalid, that they should be given a lien on the interests of the heirs to whom they loaned the money in the renewed partition judgment.

11. ————: **Adjusting Equities: Breadth of Pleadings.** In partition proceedings the court has wide latitude in the adjustment of all equities. If the answer of some defendants sets up that they are owners by purchase of the interests of certain heirs for money advanced, and the proof shows that they are not purchasers but only have liens on the interests of such heirs, their rights should be adjusted, even to the extent of requiring the pleading to be amended.

12. ————: **Tortfeasor: Allowance.** Where the tortfeasor in possession of the property tried to collect all the rents obtainable, and used the money in improving and caring for the estate, he will not be charged, in the final partition decree, with the reasonable rental value of the property, but only with what was actually received.

Appeal from Butler Circuit Court.—*Hon. Jesse C. Sheppard*, Judge.

REVERSED AND REMANDED (*with directions*).

*Louis F. Dinning, John M. Atkinson* and *David W. Hill* for plaintiffs-appellant.

*Phillips, Lentz & Phillips* for defendants-appellant and respondent William Ferguson.

*Wilson Cramer* for respondent James L. Dalton.

*Ernest A. Green* for respondent James Lavin.

GRAVES, J.—The original petition in this case was filed in 1901. [Davidson v. Davidson, 226 Mo. l. c. 13.] The exact character of this petition is not material and we only mention it in passing. In January, 1902, all the heirs at law of I. M. Davidson except Rose Belle Finley filed their amended petition in this cause, in which petition they asked, first, for a construction of the last will of the said I. M. Davidson, deceased, and in that connection asked that a trust attempted to be created by such will be declared void for uncertainty and other things; and, secondly, this amended petition prayed for the partition of the lands, and in connection with such claim urged that such lands should be sold and the proceeds divided. The defendants named in that suit were Rose Belle Finley, one of the Davidson girls, James L. Dalton, and some other parties who held liens against the Davidson estate. Issues were duly formed by appropriate pleadings, and the circuit court of Butler county entered an interlocutory decree of partition June 19, 1903. Under this interlocutory decree an attempted sale was had and the I. M. Davidson Real Estate and Investment Company was reported as the purchaser of all the landed interest of that estate, reasonably

estimated at $200,000, for about $98,000. In October, 1903, a final judgment was entered approving the report of sale and ordering distribution. Dalton, who had been appointed by the court as trustee under the Davidson will, was discharged from his trust by order duly made. No appeals were taken from this judgment. In May, 1906, Laura Carter Davidson, who, through her guardian Mary J. Davidson, was a party plaintiff in the partition case, upon the filing of the amended petition in 1902, supra, having attained her majority, brought a direct proceeding in the circuit court of Butler county, attacking the interlocutory and final judgments aforesaid for fraud and other matters, and attacking the sale, the report of sale and the deeds made thereunder for the same reasons. In this case, which for convenience, we shall hereafter speak of as the Laura Davidson suit, issues were duly framed by appropriate pleadings, and the cause was tried by the circuit court of Mississippi county, to which court the venue had been changed. The petition in the Laura Davidson suit not only prayed for the cancellation of the judgments aforesaid, but also prayed to have her interest of one-ninth in her father's estate quieted in her. The Davidson heirs who were made defendants by Laura Carter Davidson filed answers admitting the facts of her petition and asking that the decree go as prayed for by her. The answers of the other defendants were quite different. The Mississippi Circuit Court held that the final decree of partition and all the proceedings after the interlocutory decree were void, and vacated all the steps taken after the interlocutory decree. This judgment with a slight modification was affirmed in Davidson v. Davidson Real Estate & Investment Co., 226 Mo. 1. This disposition of the Laura Davidson case, left the case now before us pending in the circuit court of Butler county upon a mere interlocutory judgment in partition, which we then said was a judgment within the

breast of the trial judge until final judgment was entered.

Taking a cue from our opinion in the Laura Davidson case, an amended petition was filed in this case in the Butler Circuit Court on April 4, 1910. New plaintiffs were substituted and added and new defendants added, if we take as the starting point of this long drawn-out lawsuit the petition of 1902 as the basis. This petition, if the description of the real estate is omitted, is not long, and had best be set out. Leaving out the long list of property involved therein, it reads:

"Now at this time come the plaintiffs in the above entitled cause and by leave of court file this, their amended petition in said cause, and for such amended petition state:

"That the plaintiffs are seized, as tenants in common, of the following described lands, to-wit:  .  .  .

"And that a majority of the owners thereof reside in said county of Butler.

"Plaintiffs further state that the plaintiffs are the owners and entitled to the following shares of said lands:

"Jay Davidson and Ida M. Rhodes, each an undivided one-ninth.

"Mary J. Davidson, Ira M. Davidson, Rose Belle Davidson, Laura C. Davidson, Grant Davidson, May Davidson and Nina Davidson, each an undivided one-eighteenth.

"Louis F. Dinning and John M. Atkinson, each an undivided 7-72.

"David W. Hill an undivided 7-36 of the lands above described; and the defendant James L. Dalton claims a debt against said lands in the approximate sum of twenty-six thousand dollars, mentioned in the interlocutory decree heretofore rendered in this cause; that the defendants, William Ferguson and I. M. Davidson Real Estate & Investment Company claim the

share of said lands belonging to Jay Davidson; that the defendants Isaac H. Barnhill and I. M. Davidson Real Estate & Investment Company claim the share of lands belonging to Ida M. Rhodes; that the plaintiff Chris L. Rhodes is the husband of Ida M. Rhodes; that the plaintiff Nina Davidson is a minor, under the age of eighteen years, and that W. W. Turner is the duly appointed, qualified and acting curator of her estate; and that the defendant I. M. Davidson Real Estate & Investment Company is a corporation organized and existing under and by virtue of the laws of the State of Missouri.

"Plaintiffs further state that whatever right, title or interest the defendants William Ferguson and Isaac H. Barnhill held, or claim to hold, in the above described lands are held by them in trust for the I. M. Davidson Real Estate & Investment Company, which corporation has since the 12th day of October, 1903, been wrongfully in the possession of all the lands above described, and has wrongfully collected and appropriated, to its own use, the rents and profits for such time, to the extent of $100,000, and for which rents and profits the owners of said property are entitled to an accounting.

"Plaintiffs further state that the plaintiffs hold title to the above described real estate by virtue of the last will and testament of Isaac M. Davidson, deceased, a certified copy of which was, on the 11th day of November, 1897, recorded in book 51 at page 36 of the deed records of Butler county, Missouri, and by virtue of a decree of the circuit court of Mississippi county, Missouri, rendered on the 11th day of April, A. D. 1908, a certified copy of which was, on the 22nd day of March, A. D. 1910, recorded in book 90 at page 502 of the deed record of Butler county, Missouri, and by virtue of a quit-claim deed recorded March 21, A. D. 1910, in book 87, at page 500 of the deed records of Butler county, Missouri, and a quit-claim deed from

Louis F. Dinning to John M. Atkinson on the second day of April, A. D. 1910.

"Plaintiffs further state that the estate from which said lands descended has been finally settled and all claims against the same have been fully discharged.

"Plaintiffs state that the interlocutory decree rendered in this cause on the 16th day of June, 1903, and entered in book S at page 352 of the circuit court records of Butler county, Missouri, is erroneous and does not correctly adjudge and define the true interests of the owners of the above described real estate; that some of the interests in said real estate, since the rendition of the interlocutory decree, have changed or merged and that said interlocutory decree ought to be set aside and for naught held.

"Plaintiffs further state that on account of the nature and character of the lands sought to be divided, and the number of the owners thereof, partition in kind cannot be made without great prejudice to the owners and that said lands ought to be sold and the proceeds partitioned among the several owners.

"Plaintiffs further state that the above described real estate consists very largely of houses and improved farms, yielding annually about twelve thousand dollars rent; that said property (except some of the apartments of the Davidson Flats) is now in the possession of N. C. Whaley, receiver appointed by the circuit court of Mississippi county, Missouri, which receivership has not yet terminated and that it is necessary that a receiver should be constantly in charge of said property to preserve the same and collect the rent.

"Wherefore plaintiffs pray the court to appoint, as soon as said Mississippi Circuit Court receivership be terminated, a receiver to collect the rents and to care for and preserve the said real estate while this property is in litigation in this court; that said inter-

249 Mo.—31

locutory decree of partition heretofore entered herein be set aside and for naught held; that partition of said lands may be made among the owners thereof according to their respective interests therein; that said lands be ordered sold and the proceeds divided among the said owners in proportion to their respective interests; that the I. M. Davidson Real Estate & Investment Company, and William Ferguson and I. H. Barnhill, its officers, account to the owners of said property for the rents and profits thereof from the 12th day of October, 1903, aggregating one hundred thousand dollars; and for such other and further orders, decrees and relief in the premises as may seem just and proper to the court, plaintiffs will ever pray.''

Each defendant filed a separate answer, to which plaintiffs replied. The pleadings are verbose, covering nearly 100 pages of this voluminous record. The circuit court, after trial, modified in some respects the original interlocutory decree, and from this modified interlocutory decree the plaintiffs have appealed, as also have the defendants Barnhill and the I. M. Davidson Real Estate & Investment Company. The contentions of the several parties will have to be stated separately, to the end that a fair understanding of the present record may be had from any reasonably short statement of the case. To that end we will note that portion of the interlocutory decree and the pleadings and proof in connection with the contentions and counter-contentions with reference to each party. Reference will also be made to our former opinion in Davidson v. Davidson Real Estate & Investment Co., 226 Mo. 1, which opinion should be read in conjunction with this opinion for a fuller statement of some of the pertinent issues and facts. This gives a general outline of the case now here.

I. Plaintiffs urged that the court erred in the modified interlocutory judgment in making any allow-

Davidson v. Real Estate & Investment Co.

ance to James Lavin and in making such allowance a
lien upon the Davidson estate. Lavin

**Partition:** upon application at the April term,
**Allowances** 1910, of the Butler Circuit Court was
**of Probate**
**Court:** permitted to come in as a party defend-
**Mortgages**
**as Additional** ant. In the original interlocutory judg-
**Security:** ment there was an allowance of $4350
**Cancelled:**
**Res Adjudicata.** allowed to Ferguson and Wheeler. The
basis of the allowance in the original
interlocutory judgment was that such amount was due
them under an allowance or judgment in the probate
court against the Davidson estate. Lavin claims to
be the assignee of this claim. In the original inter-
locutory judgment it was further provided: "That
out of the proceeds of said sale there be paid, first,
the costs of this proceeding, including an allowance
of a reasonable fee for plaintiffs' attorneys hereinafter
to be made by the court: secondly, the claim of Fer-
guson and Wheeler aforesaid allowed by the probate
court." Lavin claims to be the assignee of this attor-
neys' fee allowed to Phillips & Phillips in the sum of
$5000. In the modified interlocutory decree, the one
here for review, the trial court found for Lavin upon
both these items, in the aggregate sum, principal and
interest, of $10,124.40. Lavin affirms the correctness
of this ruling, and plaintiffs deny. It should be here
remarked that both items of the present Lavin claim
were assumed by the Real Estate & Investment Com-
pany at the time it attempted to purchase at the sale
in 1903, and said company gave notes and deeds of
trust to secure the two claims. Plaintiffs, in the brief,
thus challenge the Lavin allowance in this present
judgment:

"With reference to the defendant James Lavin,
plaintiff's position is simply this—the decree of the
circuit court of Mississippi county is conclusive as to
his claims (whether they exist in the form of assign-
ments or merge in the notes read in evidence) here

asserted.    That was a suit, among other things, to
determine and quiet the title—he was made a party
defendant, was duly summoned, filed two answers,
judgment was rendered against him, determining the
title to be in the nine devisees in equal shares and
barring whatever claims he might have, whereby he is
precluded and estopped from asserting his claims in
this proceeding, which he owned and held at the time
of the proceeding, as he so testified in this case.    He
took no appeal.    The trial court erred in not sustain--
ing plaintiffs' plea of *res adjudicata* as to his claims.''

Lavin was the holder of these two notes and deeds
of trust from the Real Estate & Investment Company
at the date of the Laura Davidson suit in Mississippi
county.    By evidence in this record he shows that the
answer filed for him in the Laura Davidson case was
filed without authority; that he had always held unas-
signed and uncancelled these two claims and only took
the notes and mortgage as additional security; that
the claims have never been paid.    The validity of the
original Ferguson and Wheeler claim does not bear
denial.    It was reduced to judgment in the circuit court
of Carter county first, then probated in the probate
court of Butler county against the estate of I. M. David-
son, and later in the interlocutory decree of 1903 was
directed to be paid out of the proceeds of the sale prior
to partition of such proceeds.    The Phillips claim was
duly allowed as costs and directed to be paid in the
same way.    It is evident that these were just demands
against the Davidson estate and should now be paid
out of the proceeds of that estate, unless Lavin has
in some way lost his rights.    This plaintiffs say was
done by the judgment in the Laura Davidson case.    In
the petition of plaintiff in that case, the only place
therein where Lavin's name is mentioned is in this
clause:    "That said corporation, by virtue of said par-
tition proceeding only, is in possession of all the above
described real estate, and has executed mortgages and

deeds of trust thereon, now held by James L. Dalton
and James Lavin defendants herein to the extent of
$40,000 or more." But for the purpose of this case
it may be granted that as to these two mortgages, thus
meagerly described in the petition, the judgment of
that court did destroy the mortgage lien held by La-
vin, yet does it follow from such fact that the trial
court in the case at bar was in error in directing the
original claims to be paid out of the proceeds of the
partition sale to be had under the new order of sale?
We think not. Grant it that Lavin was served in that
case, and grant it further that the decree in that case
divested Lavin of his mortgage lien, yet there is am-
ple evidence in this record to sustain the present in-
terlocutory decree. Lavin has never been a party to
any of the frauds connected with this case. His evi-
dence tends to show that he never surrendered his ori-
ginal claims; that he held on to them and only took
those mortgages and notes as additional security; that
he paid actual cash for the claims is not seriously
disputed; that originally they were valid claims
against the Davidson estate is not seriously disputed.
If the trial court believed the evidence for Lavin in
this record, there is ample evidence to sustain this al-
lowance, and yet give the Mississippi county judg-
ment its full force and effect. If those original claims
had never been canceled and merged into those notes
and mortgages as full payments thereof, as the evi-
dence tends to show, then Lavin had valid claims which
should be in this judgment. The trial court heard
these witnesses and believed them, and we shall not
disturb this finding. Plaintiffs are overruled on this
contention.

II. The modified interlocutory decree, in so far
as it affects the defendant James L. Dalton, is vigor-
ously attacked by the plaintiffs. The amended peti-
tion of the plaintiffs we have duly set out in our state-

ment. To this amended petition, filed after the Laura Davidson case was decided by this court, Dalton filed an answer consisting (1) of a general denial and a prayer for the dismissal of this amended petition, and (2) a plea of former adjudication by virtue of the first interlocutory decree entered June 19, 1903. To this answer the plaintiffs replied thus: (1) That said decree pleaded in bar by Dalton was only interlocutory and was in no sense final and conclusive; (2) that the right to the share of Rose Bell Davidson and Ira M. Davidson had been against said Dalton by the circuit court of Mississippi county in the Laura Davidson case; (3) that the said Dalton was estopped to claim said two interests by reason of his acts and conduct in the Laura Davidson case; (4) that as to the claim of said Dalton allowed in the original interlocutory decree for $28,618.24, it had been fully settled and satisfied; and (5) that the allowance to said Dalton of $150 per month for fifty-eight months, the term of his trusteeship, was excessive, unwarranted and wrong, and that the original interlocutory decree should be reduced so as to allow said Dalton only $50 per month. The original interlocutory decree made allowances to Dalton thus: (1) two shares in the estate (Rose Bell Finley's and Ira M. Davidson's) subject to certain liens and claims; (2) for money advanced to the estate by the trustee $16,966.76; (3) for salary as trustee at $150 per month, $8,700; (4) certain allowances to Dalton for liens held by him on other interests. The modified interlocutory decree at stake in the present hearing practically gives to Dalton what was given to him by the interlocutory decree first made in the case. These are the questions presented so far as Dalton and the plaintiffs are concerned. These questions can be thus summarized:

(1) Did the decree of the Mississippi Circuit Court divest Dalton of these two shares, if in fact he ever owned them?

(2)  Is Dalton estopped from claiming these shares, if he ever owned them, by his conduct in the Laura Davidson case?

(3)  Is the interlocutory decree of June 19, 1903, pleaded in bar by Dalton, final and conclusive, as to his rights?

(4)  If such decree is not conclusive, then in what respect is the present interlocutory decree wrong in practically reaffirming the old interlocutory decree. The latter question will of necessity involve the discussion of several others, which can be outlined if we reach that point.

Taking our questions, supra, in their order, we can get at the meat of this controversy so far as Dalton is concerned.  Going to the first question, we are impressed that counsel for plaintiffs have misconstrued the scope of the judgment in the Laura Davidson case as rendered by the Mississippi Circuit court, and as slightly modified, and affirmed by this court.  There is some broad language in the latter part of that judgment which lends credence to plaintiffs' contentions.  Judgments, however, cannot be broader than the issues made by the pleadings. That action was one by Laura Carter Davidson, one of the devisees against the other devisees, the corporation, Dalton, Lavin and others.  In that petition Dalton and Lavin are not described as owners or alleged owners of the land, but it describes the I. M. Davidson Real Estate & Investment Company as the party claiming the land, and then describes Dalton and Lavin as persons who hold deeds of trust given them by such corporation on these lands.  It is true that in the prayer of the petition it is said:

"Wherefore, plaintiff prays the court to cancel, set aside and for naught hold the decree of partition aforesaid and the order of sale made thereunder, set aside and for naught hold the report of sale made

*Final Decree: Set Aside: Status of Interlocutory Judgment.*

by the special commissioner thereunder, set aside and for naught hold the order of this court ordering said special commissioner to make and execute the deeds aforesaid, and to cancel, set aside and for naught hold both of the special commissioner's deeds above referred to as constituting a cloud upon the title of plaintiff, and to render judgment against the defendants, *determining the title to said real estate, and quieting and confirming plaintiff's title to an undivided one-ninth interest in and to all the above described real estate,* and to enjoin the defendants, their officers, attorneys, agents, servants and employees from selling or disposing of said real estate, or otherwise dissipating or injuring the same, pending the final disposition of this cause; and that the court appoint some suitable person to take charge of said real estate as trustee or receiver, collect the rents and profits thereof, and pay the same over to this plaintiff and the other heirs of Isaac M. Davidson, deceased, as is provided by the terms of said will, and for all other proper relief in the premises plaintiff will ever pray.''

Dalton never claimed any interest in the share of Laura Carter Davidson, except in so far as the deed of trust given him by the corporation might affect her claims. The answers of the other devisees in that case prayed for no affirmative relief. Their answer simply admitted the facts pleaded by Laura Carter Davidson, and asked that judgment be entered as by her prayed. This petition when fairly construed only asked for a determination of the title so far as Dalton is concerned on the ground that he was a mortgagee under a conveyance from the corporation. We think this decree, so far as Dalton is concerned, cut up by the roots his mortgage lien, but as to him and Lavin went no further. If as a fact, Dalton owned two shares in this estate, we are not prepared to say that the Laura Davidson decree barred his rights. It is clear that he was only sued in that action as mortgagee,

and the decree could not be broader than the issues made by the pleadings. Plaintiffs' plea of res adjudicata on the grounds above detailed and discussed should be overruled. The quieting of title in that judgment decreed, should be construed to mean, so far as Dalton and Lavin are concerned, as only applicable to their deeds of trust, which covered the whole estate, and as given by the corporation. The two alleged grantees of Dalton by their answer in the Laura Davidson case were not asserting their title to these shares and asking affirmative relief. They seemed to be content with the views of the plaintiff which only attacked Dalton in so far as he claimed a mortgage lien upon the whole estate. We deem the plea of res adjudicata not well founded.

Going now to the second question. Does the conduct of Dalton in the Laura Davidson case now preclude him from claiming these shares? In his answer he did defend the title of the corporation to all these lands. This he would naturally do in the protection of the deed of trust which he held from the corporation. There is no question that Dalton's whole conduct in that case was to uphold the sale under partition, which sale, if valid, passed title to all the lands to the corporation. Does this conduct now estop him from now claiming the interests, if any he had, prior to the sale? His grantee did join in a request that the judgment in partition be set aside and for naught held. This Laura Davidson asked and in her request they joined. That request only affected the deed to the corporation and subsequent mortgages made by the corporation. At least it was only granted that far. Had the whole request been granted in the Laura Davidson suit, and both the final and interlocutory judgment been uprooted, how would Dalton's conduct in that case have affected his grantees, if in fact they had actually parted with their title by deeds to Dalton? One cannot complain of the acts of another unless

such acts work injury to him. If as a fact Dalton owned these two shares, his conduct in that case could not have worked injury to his grantees. He had been adjudged to own them, and that decree left him the adjudged owner under the interlocutory decree of June 19, 1903. We do not believe that his conduct of necessity bars him of his claimed rights. These plaintiffs must strike deeper than the doctrine of estoppel.

Passing to the third question. Does the first interlocutory decree finally fix the rights of Dalton? In the trial resulting in the modified interlocutory decree, and from which this appeal is taken, he took that position in his answer. The question then is, what is the character of the interlocutory decree of June 19, 1903? Is it such a decree as finally fixes rights in the case at bar? Upon motion to modify our judgment in the Laura Davidson case (226 Mo. l. c. 39), we said this concerning that interlocutory decree:

"It developed in the evidence in the case at bar, that Dalton had been allowed in the partition suit $150 per month for his services. It was also proven that Dalton whilst acting as trustee had bought the interests of two of the devisees for $8000 and had sold them for $15,000, thus clearing $7000 on the deal. The plaintiff, in her motion, asks us to modify the interlocutory judgment in the partition suit so as to cut down Dalton's allowance for services, and to charge him with this seven thousand dollars. Counsel misconceive the case we have before us. The case at bar is an action to set aside the judgment of the circuit court of Butler county, because of fraud in the concoction of that judgment. The circuit court of Butler county construed the will, declared that no valid trust had been created thereby and entered first an interlocutory judgment of partition and order for sale. Afterward it approved the report of sale and entered its final judgment. This entire judgment was attacked for

fraud in the present case, which is a direct proceeding in equity to set the same aside. The trial court held that there was fraud in the proceeding occurring after the interlocutory judgment, but that there was no fraud in the procurement of this interlocutory judgment. In these views of the trial court we concurred. There was no fraud in the proceedings thus far, but the fraud began thereafter.

"Had there been an appeal from this interlocutory judgment, or from the final judgment, then we could review the matters urged in this motion, but there was no such appeal, and in the case at bar, the only thing we can do as to this interlocutory judgment is to set it aside on the ground of fraud in its concoction, or in the absence of such fraud, permit it to stand. The latter we have done, so that the original partition suit stands in the circuit court of Butler county with an interlocutory judgment only. That case is not now before us and never has been before us. The case we have is simply one attacking the judgment in the partition case. It should be remembered that in the partition case after the affirmance of the judgment in this case, there is only an interlocutory decree and not a final decree. As to what powers the circuit court of Butler county has as to this simple interlocutory decree, it is not proper for us to say in this case. We can only discuss that question, if the partition case ever reaches this court. For the present, the circuit court of Butler county will have to wrestle with all questions pertaining to its duties relative to the interlocutory decree. We can only say that there was no fraud in the concoction thereof, so far as this record is concerned, and protect the interest of Dalton thereunder so long as it stands."

It thus appears that we by no means attempted to affirm that decree, for the good reason that it was not before us upon the question of error or no error in its make-up. The case wherein it was entered was not

before us.  We were trying a direct proceeding in equity to set aside that decree as well as the final decree on the ground of fraud.  The Mississippi Circuit Court found no fraud in the case until after the entry of interlocutory judgment.  We affirmed that court's judgment upon that question.  We, however, left the trial court to wrestle with the exact status of that decree when such court undertook to proceed further with the case.  That decree, therefore, has never been reviewed by any court except upon the question of fraud or no fraud in the concoction of the judgment.  Since that time the Butler Circuit Court has proceeded with the partition suit and has modified the original interlocutory decree in certain phases and from this new decree plaintiffs have appealed. Under these circumstances is Dalton's plea of *res adjudicata* good?  This bespeaks a consideration of the legal status of interlocutory decrees in partition suits.  Under our statute (Sec. 2038, R. S. 1909), parties in a partition case can appeal at either one of two stages of the case.  Such statute says the parties may appeal ''from any interlocutory judgments in actions of partition which determine the rights of the parties, or from any final judgment in the case.''

But before discussing the situation of an ordinary interlocutory judgment in partition there is a question peculiar to this case which should meet with disposition.  In this case there were both an interlocutory judgment and a final judgment.  No appeal was taken from either.  Later both were attacked for fraud in the Laura Davidson case and the final judgment set aside for fraud as well as for other reasons.  Does this situation make the interlocutory decree conclusive, although it be conceded that it would not be conclusive upon the parties until after final judgment in the ordinary case?  We find no authority for such a situation and must permit this question to ride off upon the reason of the thing.  Fraud vitiates every-

thing which its withering finger touches. Fraud in the concoction of a judgment, when so adjudged by a chancellor, leaves the case as if no judgment had ever been entered. So we think that when the final judgment, so thoroughly soaked with fraud, as was decreed in the Laura Davidson case, was held for naught, then it left the partition suit pending just as if no final judgment had ever been rendered, and as to the interlocutory decree theretofore entered left all parties in the possession of all rights they would have under an interlocutory decree in any other partition case. We, therefore, conclude that the circumstances of this case do not take it out of the ordinary rules.

Reverting now to the previous question, what is the legal status of this interlocutory decree of 1903 as being conclusive upon the rights of the parties? In 1891 the statute relating to appeals was amended allowing an appeal from an interlocutory judgment in partition. That provision is carried forward to our present statute, Revised Statutes 1909, section 2038.

In Aull v. Day, 133 Mo. 337, all the authorities are reviewed upon the character and legal status of an interlocutory judgment in partition. Many of these authorities go back of the Act of 1891, supra. At page 347 of that case MACFARLANE, J., says:

"That the final judgment in partition proceedings is merely interlocutory has often been declared by this court, and is so well settled that a citation of the cases is deemed unnecessary. But see Murry v. Yates, 73 Mo. 15."

"That such interlocutory judgments, made in the progress of a cause, are always under the control of the court until a final decision is reached, and may be modified at any time to meet the exigencies that may arise, is equally well settled. [Bobb v. Graham, 89 Mo. 207.]"

"The uniform holding of this court before the statute allowing an appeal, that an appeal, or writ of

error, for such interlocutory judgment, would not lie, rests upon the theory that such judgment continues under the control of the court and is subject to corrections and modifications. The right to correct and modify its own orders, 'springs from the court's power to control its own action in pending poceedings, so as to subserve the ends of justice.' [Bryant v. Russell, 127 Mo. 433.] Courts should not leave the matter of controversy 'in such a condition that its final administration may be wholly inconsistent with equity and good conscience.' [Shields v. Barrow, 17 How. (U. S.) 130. See, also, Hiles v. Rule, 121 Mo. 256.]

"Elliott says: 'Until there is an ultimate judgment the case is not finally disposed of, inasmuch as the trial court may change its rulings, award a *venire de novo,* grant a new trial, or make some such order, notwithstanding the fact that in other rulings it may have clearly manifested a purpose to carry its rulings into the ultimate judgment or decree.' [Elliott, App. Proc., sec. 83.]

"Black, in his work on Judgments (sec. 308) says: 'An interlocutory judgment or decree, made in the progress of a cause, is always under the control of the court until the final decision of the suit, and it may be modified or rescinded, upon sufficient grounds shown, at any time before final judgment, though it be after the term in which the interlocutory sentence was given.'" And in page 348 of what opinion he thus discusses the Act of 1891, which is in effect, if not in exact words, our present statute:

"But it is said that section 2246, Revised Statutes 1889, as amended by Laws of 1891 (page 70), makes the judgment in partition, which determines the rights of the parties, final on that issue and is therefore beyond the control of the court after the term at which it was rendered.

"The only purpose of the statute is to give a right to appeal from such an interlocutory judgment. Noth-

ing in the act discloses an intention to change, in any respect, the character of the judgment in form or effect. Indeed the statute denominates the judgment as 'interlocutory,' and provides that 'a failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in the case.' The plain purpose of the law is to give a party the right of appeal from the order when made, but all his rights to have the adverse ruling reviewed on appeal from the final judgment are reserved. [Ess v. Griffith, 128 Mo. 60.] If no direct appeal is taken the interlocutory judgment stands merely as a part of a pending proceeding and is under the control of the court.''

Of course if an appeal is taken by either party from the interlocutory decree and the judgment of this court invoked, and that interlocutory decree is affirmed, then the rights of the parties become firmly and finally fixed, and such judgment of affirmance makes the interlocutory judgment conclusive, and one which could be pleaded in bar. This rule is well stated by LAMM, J., in Padgett v. Smith, 206 Mo. l. c. 312, in this language:

''It has been held that an interlocutory judgment in partition, unappealed from, remains interlocutory in character and within the supervision of the court until final judgment at a subsequent term. [Aull v. Day, 133 Mo. 337; Ess v. Griffith, 128 Mo. 50.] It was argued in the Aull case and the Ess case that the mere statutory right to an appeal from an interlocutory judgment, though unused, changed the interlocutory character of such judgment into a final one; but that argument was disallowed and it was held that the unexercised, naked right to appeal from such judgment left the judgment interlocutory in character. But the situation changes when an appeal from such order

is taken and the judgment is affirmed here. The judgment then, in effect, becomes the judgment of this court; and may a court, *nisi*, set aside our judgment, or be held to commit error because it does not? To so hold reverses the logical order of things and opens the door to confusion."

In the modified interlocutory decree it is said:

"The court further finds the interests of the parties to the above described lands to be as follows; that James L. Dalton is entitled to an undivided two-ninths interest in and to all of said above described real estate as heretofore found by the interlocutory decree of June 19, 1903, *and affirmed by the Supreme Court in the case of Laura Carter Davidson versus I. M. Davidson Real Estate & Investment Company, James L. Dalton and James Lavin, on March* 1, 1910."

We have italicized the objectionable recital so far as the present point is concerned. That interlocutory judgment was not affirmed in the Laura Davidson case and could not have been affirmed in that case. All we did say or could say in that case was that the record before us in that direct proceeding would not authorize us to vacate such judgment for fraud. The question of error or no error, mistake or no mistake, as to that judgment was not before us, and this is made plain in the opinion upon plaintiffs' motion to modify our judgment in that case. [Davidson v. Real Estate and Investment Co., 226 Mo. l. c. 39.]

From this it follows that there is no vitality in Dalton's plea of *res adjudicata*. This leaves him a general denial in the present record. The interlocu-

**Trustee: Purchase of Interest: Conclusiveness of Deeds.** tory decree not being conclusive, how stands the adjudication in the present record that Dalton owns two-ninths of the Davidson estate? Plaintiffs Rose Belle Finley and Ira M. Davidson claim these shares. Dalton claims them by virtue of deeds to them, as found and recited in the

original decree. Upon the present record plaintiffs Rose Belle Finley and Ira M. Davidson make proof to the effect that they are two of the nine devisees under the Davidson will. This proof makes a *prima facie* case for them. If Dalton introduced his deeds in this record, we failed to find them. He could have introduced them under his general denial. As we see it he rested content by introducing the original decree reciting these deeds as made long prior to this suit. But we need not stick in the bark upon this point. There is oral evidence in the record which shows that Dalton whilst acting as trustee under the will, and whilst in law and in fact the trustee of these two parties, bought their respective interests for $4000 each; that he afterward bargained their interests to others for $15,000. He claims in this record that he did not transfer the interest, because he was never paid for them. The original replies of these two plaintiffs were put in evidence in the case, and from them it appears that they admitted the execution of the deeds to Dalton, but averred that he was their trustee, and other facts which would avoid the deeds. This oral proof as to the deeds went in without objection and the case seems to have proceeded upon the theory that Dalton did have deeds from these two devisees. This being true we would not disturb the modified decree, but for one thing. The fiduciary relation between these parties at the time of these deeds is shown by the evidence. That fact admitted, it devolved upon Dalton to show the fairness of his contracts or deeds. That fact admitted, the burden shifted and it was for Dalton to explain his conduct and show the fairness of these deeds. This he did not do and made no attempt to do. There is so much in this record tending to show the absolute inadequacy of this price, that we cannot see how Dalton could carry the burden imposed upon him by the fiduciary relationship. We do not see

how he was adjudged an interest under these deeds in the first decree. This record shows that he was adjudged an interest under these deeds in the first decree. This record shows that his contracts with these two wards were utterly unconscionable, and his deeds could not stand. Even did his proof in this case consist of the deeds themselves, rather than the parol proof of them, the modified decree should not stand. As to these two interests the court should have declared them to be in Rosa Belle Finley and Ira M. Davidson, and not in Dalton. Dalton, in equity and good conscience, should be allowed a lien thereon or the proceeds thereof for the $4000 each, which he advanced and paid these parties, together with six per cent interest from the date of payment. Such would do equity to Dalton and is certainly all that he is entitled to under this record, or in our judgment, taking into consideration his admission here, under any record he could possibly make. To this further extent this modified decree should be further modified.

Going now to the proposition of the allowance of $150 per month for fifty-eight months' service. Upon this item the prior decree is not conclusive. The weight of the proof before us in this record shows

**Trustee: Services.** those services to have been $50 per month, and the item should be reduced so as to allow to Dalton but $50 per month for fifty-eight months, rather than $150, with interest on said allowance at six per cent from the date of the original allowance.

As to the other allowance to Dalton we find no fault. He advanced more than $16,000 for the benefit of that estate and should be repaid that sum. Plain-

**Trustee: Advancement for Estate.** tiffs contend that he settled this by taking the notes of the corporation. There is sufficient evidence in the record to authorize the trial court to find that Dalton is still the real owner of the note given on his in-

debtedness due from the estate and that such note has not been paid, and hence the indebtedness not paid. Not only so, but there has been no assignment of the indebtedness by Dalton, save and except a receipt given the sheriff at the sale. That sale and all matters connected with it was uprooted by the Laura Davidson suit. The estate got the benefit of these advancements from Dalton. It got the benefit of his services, and each should in fairness be paid out of the estate.

This concludes the Dalton end of this much mixed controversy.

III. Defendant Isaac H. Barnhill is in this shape upon the record. By the modified interlocutory decree the court found that he had no title to any part of the Davidson estate lands, by reason of his attempted purchase of an interest therein, nor did he have any title to lot 28, the Davidson Flats, a very valuable piece of property, and decreed title out of him. The court also found that he was indebted to the estate in the sum of $794.68, but on the other hand found that Barnhill had advanced to Ida M. Rhodes $17,222.07 or her interest in the estate, and directed such sum to be paid out of her one-ninth interest in the net proceeds of the sale. Barnhill complains of the first three items above named and the plaintiffs of the latter.

The pleadings may be of interest. The petition we have in our short statement.

Barnhill in a voluminous answer says: (1) that he denies all facts in the petition stated except those specifically admitted; (2) denies that Dinning, Atkinson and Hill are proper plaintiffs or have any interest in the subject of litigation; (3) denies that Ida M. Rhodes or Chris, her husband, has any interest in the case, and avers that he bought the interest of the said Ida M. for $11,000 on the 12th of October, 1903; (4) that he is the owner of lot 28, having purchased after a foreclosure sale, and after detailing at great length just

how he procured the title, asks that the original decree be so modified that it find title to this lot to be in him; (5) that he was entitled to $5850 for assisting in managing the Davidson estate, and only received from it $1107.15, and is entitled to receive $4742.85 more; (6) he then recites the organization of the I. M. Davidson Real Estate & Investment Company and avers that certain sums were paid to the widow and four minor devisees by such company for their maintenance and support, and asks that such sums be charged by way of advancements; (7) he says that he and Ferguson tried to dissuade the widow from selling them her $10,000 stock in the corporation for $3000, but that she persisted and they bought the stock, at that sum, and that thereby he is entitled to a one-half of the widow's former one-ninth interest in her husband's estate and asks the court so to decree; (8) he attacks the appointment of Whaley as receiver by the circuit court of Mississipi county, and charges that D. W. Hill, through Whaley, has been in possession of the property, collecting rents, and he asks that they be called to account; (9) he avers that the circuit court of Mississippi county wrongfully ordered $300 per month to be paid by Whaley to the widow and four former minors, and that Whaley has so done, and that by some unknown process one-half of that sum has each month found its way into the pockets of Dinning, Hill and Atkinson, and he asks that these sums be declared an additional lien upon the interests of these five devisees and emphatically demands that the lawyers aforesaid be by judgment of the court directed immediately to "cough up" their part of such sums; (10) this defense in another attack upon Dinning, Hill and Atkinson, the details of which need not be noted here; and (11) lastly it is urged that the Butler Circuit Court acted under a mistaken belief that the estate had been fully settled when it discharged Dalton as trustee in 1903, and he asks the reinstatement of Dalton.

By reply plaintiffs fully pleaded former adjudication and estoppel as to the claims of Barnhill to any actual interest in the estate, including lot 28 above mentioned, which lot it is averred was held by Barnhill for the corporation. The reply in respectful language then places in issue all other matters of this lengthy answer.

So much for the pleadings in the Barnhill side of this controversy.

Most of these contentions can be disposed of by stating a few of the record facts. Lot 28, mentioned supra, is a very valuable property, worth $20,000 or more and bringing in rent at the rate of **Purchasing Property for Estate.** about $180 per month. When Dalton was trustee this property had been converted from a hotel into flats. By direction of the court it was mortgaged by Dalton for $8500. During the pendency of the Laura Davidson case this mortgage was foreclosed and Dalton agreed to and did buy it in for the Real Estate & Investment Company. Later Dalton deeded to Barnhill, and he at the time took the deed with the understanding that he, like Dalton, was holding it for the corporation. Barnhill put a new loan on it for $8500 and still later concluded that he actually owned the property in his own right. The loan of $8500 practically covered the price bid at the sale. He took possession of it and collected the rent for himself. The learned circuit judge evidently concluded that the property never in fact belonged to Barnhill, but remained at all times as the property of the corporation, and passed from the corporation by the Laura Davidson decree in this court. The evidence fully justifies the finding of the lower court in decreeing the title of this property to be in the Davidson estate. Barnhill left it with the same-size mortgage upon it and collected and appropriated more rents than were sufficient to meet the accrued interest and costs of sale. From other parts of the evidence and the decree it is

evident the court charged him with these rents and credited him with all that he was entitled to receive and yet found him indebted to the estate over $700, which finding is likewise correct.

Next he urges that he is entitled to have decreed in him one-half of the interest of the widow. This contention is based upon the proposition

**Sale by Widow of Stocks in Illegal Corporate Purchaser.** that the widow, Mary J. Davidson, owned $10,000 of the stock in the corporation. That he and Ferguson urged her to hold her stock, but that she insisted upon selling it to them for $3000, and they bought it. They alleged that the corporation was organized to take over the Davidson estate and that Mrs. Davidson was a party to the organization. We need not go further into details. The history of this corporation is fully detailed in the Laura Davidson case, 226 Mo. 1. The sale of this stock did not by law carry the title of Mrs. Davidson to the estate property, if any title she had. As said in the opinion in the other case the Davidson devisees were not possessed of business acumen, and such can be gathered from this case. The trial court was right when it declared that neither Barnhill nor Ferguson was entitled to Mrs. Davidson's interest in the estate.

Next it is contended that Barnhill is the owner of the interest of Ida M. Rhodes, by virtue of a deed from her and her husband. The learned trial

**Estoppel: Real Party to Suit, Though Not Nominal One.** judge held that he was not so entitled, because, although not a party to the Laura Davidson suit, yet he as secretary and Ferguson as president of the corporation controlled and managed that suit. That in such suit they urged that the corporation was the owner of all such real estate. That Barnhill and Ferguson were the active managers of the corporation's defense to that action there can be no question. That all the Davidson devisees asked that the

corporation's rights to that property be determined there can be no question. The petition was broader than a mere action to cancel the judgment for fraud, but as to the corporation the plaintiff's petition asked that the corporation's title to the property be determined. The other devisees by answer joined in that request. One does not have to be a party to a suit to be estopped by the judgment in the case.

In 2 Black on Judgments (2 Ed.), sec. 583, p. 877, it is said: " 'Every member of a corporation is so far privy in interest in a suit against the corporation that he is bound by a judgment against it.' This doctrine has also the sanction of the United States Supreme Court; and is approved and accepted in many of the States, as well as in England." That one does not have to be an actual party to the suit to be estopped by the judgment therein is shown by the following authorities: State to use v. Coste, 36 Mo. 272; Strong v. Insurance Co., 62 Mo. l. c. 296; Wood v. Ensel, 63 Mo. l. c. 194; Cooley v. Warren, 53 Mo. l. c. 169; Landis v. Hamilton, 77 Mo. l. c. 565.

In the case at bar all of the devisees in the Davidson estate, in the Laura Davidson case, either by petition or answer, were challenging the title of the corporation. This challenge went to the fee title to all the property involved in this case. In this respect the challenge was different from that to Dalton and Lavin discussed supra. Here the Davidson devisees all join in a protest against the alleged title of the corporation. Barnhill and Ferguson, although actively in charge of the case for the corporation, as officers of the corporation, at no time claimed any title in themselves for the two interests they now claim. Neither did they claim the interest of the widow. Under their directions the corporate defendant claimed the title. They aided and abetted the corporate defendant in so claiming. They not only managed the case for the corporate defendant, but as witnesses testified for it, and all this

after their alleged deeds. Under these circumstances, the trial court was right in holding that they were estopped to now assert title in themselves.

Barnhill next complains that the trial court erred in refusing to allow him $75 per month for his services in managing the Davidson estate. In this the trial court was right. Barnhill was an officer and employee of the corporation. He was employed and paid by the corporation. He was not in charge of the estate as a cotenant, but the corporation was the party in charge of the estate. Not only was the corporation the party in charge of the estate, but it was wrongfully in charge of it. It was a tortfeasor, and neither the corporation, nor Barnhill, its employee and agent, is entitled to recover. As to the accounting had by the court, between Barnhill and the estate, the trial court seems to have carefully weighed each item. It reopened the case upon its own motion and recalled Mr. Barnhill to explain many items of account, especially those of the corporate defendant. Under the circumstances we are of opinion that the trial court's judgment upon this matter should not be disturbed.

*Services of Tortfeasor.*

The foregoing are all of Barnhill's contentions that we deem worthy of space in this opinion.

Plaintiffs urge that the trial court's action was erroneous in allowing Barnhill a lien on the interest of Ida M. Rhodes, and mainly for the reason that such a judgment was not within the purview of the pleadings. The case is in a peculiar situation throughout in this respect. As heretofore indicated the trial court seemingly proceeded upon the theory that we had affirmed the original interlocutory decree, and that the subsequent petition and answer and replies went merely to questions of modifying that decree. Plaintiffs also contend that the decree in the Laura Davidson case precludes both Barnhill and Ferguson as lienors. In this we think plaintiffs are in

*Liens.*

error. The contest in that case was one over title and not liens, save and except the liens of Dalton and Lavin. In other words, that petition attacked no lien, except such as had been put on the estate by the corporation. It was not inconsistent for both Barnhill and Ferguson in that case to assert title in the corporation, and now say they have a lien upon such a title in whomsoever it may be found to be vested. By that petition in that case they were not called upon to say whether they owned liens upon the property, even though the fee title might not be in the corporation. They did not hold liens under the corporation, but held pre-existing liens. Had the corporation won, their liens, if good at all, would have been good against the corporation and we think good against the devisees in whom title under that case was decreed. The lien given Barnhill by the trial court was for pre-existing mortgages and advances made by Barnhill and other parties to Ida M. Roberts upon her interest in the estate. Barnhill for value had acquired all these liens, and they all total the amount found by the court. These debts are debts honorably contracted and are not seriously disputed. Common honesty would demand their payment out of the interest of Ida M. Rhodes, if such can be done by a decree under the pleadings.

It seems to appear, however, that the trial court has allowed $6200 of these liens both to Barnhill and Dalton. As we gather it Dalton held two deeds of trust on the Ida M. Rhodes interest and that Barnhill claims to be the assignee of these items. They were allowed to Dalton as a lien, and if they are the same items the court upon a remanding of the cause should amend its decree so as to either take these items from Dalton or from Barnhill. To this end it might hear additional evidence. It strikes us that there has been a double charge here. This, however, can be determined fully by the trial court before modifying its

decree under the directions which we will give. Now going to the pleadings it is urged that Barnhill does not ask for such relief in his answer. It is urged that he asks for the full title rather than for a lien. This is true, but it must be recollected that in partition proceedings the court has wide latitude in the adjustment of all equities. The very object of the proceeding is to adjust all equities, and thus leave the purchaser at the partition sale with a clear record title. Again it should be remembered that in the original pleadings these claims were made in the answer by the lien holders, so far as they then existed. We are therefore of opinion that the judgment *nisi* reached the real equities of this case upon this question, under the evidence before it, and as the case will have to be reversed and remanded with directions for other reasons, the court is directed to permit Barnhill to so amend his answer as to meet this objection. We are rather of opinion that the present record will sustain the judgment, but such amendment to conform to the proof will aid matters. Ida M. Rhodes owes certain sums to Barnhill and equity demands payment.

IV. Defendant Ferguson by his answer sets up the same things as pleaded by Barnhill, except that he claims the interest of Jay Davidson, whereas Barnhill claimed the interest of Ida M. Rhodes. He likewise claims one-half of the widow's interest. Similis In Similibus. est. In fact, his answer, with the exception first noted, is practically a duplicate of the Barnhill answer, except of course lot 28 is not spoken of in this answer. The trial court found against him or his claim for a half interest of the widow's part and also said he did not own the Jay Davidson interest, but gave him a lien upon that interest for $22,633.30. The court found that he was not entitled to $75 per month for managing the Davidson estate. What we have said as to Barnhill settles all contentions as to

Ferguson. The reply raised the same issues. The plaintiffs opposed his lien on Jay Davidson's interest upon the same grounds that they opposed the lien granted Barnhill upon the Ida M. Rhodes interest. What we said as to the justice of the debt from Ida M. Rhodes to Barnhill applies with equal force to the debt from Jay Davidson to Ferguson. They were created and acquired much in the same way. What we said as to the pleadings in the one applies to the other. Under the circumstances we find no reason to disturb this part of the decree, but leave it with the suggestion made in the paragraph of this opinion relating to Barnhill.

V. We come now to the contentions of the corporation. With this defendant the trial court took an accounting. It was painstakingly done. As stated before, the court opened up the case for further evidence and himself interrogated about many items in the long accounts filed by this defendant with its answer. This evidence we have gone over carefully. The court charged the corporation with rents and other moneys received from the estate and gave credit for such items as went to keep up the estate or improve it substantially. Plaintiffs contend with much force that this defendant was a tortfeasor, and is chargeable not with what it actually received in rent, but with the reasonable rental value of the premises. Strictly speaking this may be true, but the evidence shows that the corporation was trying to get all the rents it could, and whilst it might not have collected the full amount of $1000 per month, which the evidence tends to show was the rental value of the estate during its holding, yet we do not feel justified in disturbing this finding for the slight difference it would make. The court upon this carefully scrutinized accounting found the corporation indebted to the estate in the sum of $5490.-09, and we are disposed to let that matter stand as found.

VI. The decree before us is in the nature of a modification of the original decree, and the trial court evidently intended it so. In other words he intended it to supplement the original decree. The original will is before us in the present record, and from it we can hold as in the original decree held, that the clause attempting to create a trust is void. The trial court necessarily so held when it, in the modified decree, granted partition. The decree should be modified further to be more explicit upon this point. Both parties so treated it in the last trial. Other points made by divers interests have been considered, but we do not feel that this opinion should be further lengthened with a discussion of them.

The judgment will, therefore, be reversed, and the cause remanded to the circuit court, with directions to modify its interlocutory decree so as to make it conform to the views herein expressed, and then proceed with the cause to a sale, distribution and final judgment. To that end evidence may be taken upon the questions suggested in this opinion, and amendments made to the pleadings as herein suggested.

Let the judgment be reversed and the cause remanded with the directions aforesaid, to the end that this cause may be brought to a speedy end. All concur.

## UPON MOTION FOR REHEARING AND MOTION TO MODIFY.

PER CURIAM.—Defendant Dalton files motion for rehearing. This we have examined and are of opinion that it should be overruled. Plaintiffs file motion to modify our opinion and directions therein given. In the opinion it is held that Dalton has no title to the shares of Rose Belle Findley and Ira M. Davidson. It is further held, however, that he is entitled to a lien upon these shares for $4000 each, the purchase price paid by him and six per cent interest from the dates

of payment. From the original interlocutory decree in evidence in this case it appears that Dalton had the use of lands during the years intervening from his purchase until October 13, 1903, when it was turned over to the corporation defendant. In the original interlocutory decree these shares were taxed up with $3000 received by Dalton. Having received the rents and profits, he should not receive the interest on his money. The opinion is therefore modified, so that Dalton will be permitted to receive his $4000 for each share, with interest at six per cent from October 13, 1903, instead of from the date of payment as heretofore ruled. The result is that the motion to modify our opinion filed by plaintiffs is sustained and the opinion modified as above indicated.